IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| THE ENGY GROUP, LLC, | § | Case No. 17-34848 |
| | § | |
| Debtor. | § | (Chapter 11) |

**DEBTOR'S EMERGENCY MOTION TO APPOINT A CHAPTER 11 TRUSTEE**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 23 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 23 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:

The Engy Group, LLC (the "Debtor" or "Engy Group") files this Emergency Motion to Appoint a Chapter 11 Trustee (the "Motion"), and respectfully states as follows:

**Factual Background**

1. This bankruptcy case (the "Chapter 11 Case") was filed on August 8, 2017 (the "Petition Date").

2. There is no committee or trustee appointed in this Chapter 11 Case.

3. This is not a proceeding under Chapter 11 by a "small business debtor" as that term is defined in 11 U.S.C. § 101(51D).

### Jurisdiction and Venue

4. This Court has jurisdiction over this Chapter 11 Case pursuant to 28 U.S.C. § 1334.

5. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

6. Venue of this Chapter 11 Case is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The statutory predicate for the relief requested herein is 11 U.S.C. §§ 105(a), 363, 1104, and relevant Bankruptcy Rules of Procedure.

### The Engy Group

8. The Debtor is a holding company. A corporate organizational structure chart is attached hereto as **Exhibit A**.

9. The Debtor owns 94% of the equity units in Texas Engy Drums, LLC, a Texas limited liability company ("Engy Drums"), and 100% of the equity units in Engy Belvoir Ventures LLC, a Texas limited liability company ("Engy Ventures") (collectively, the "Engy Subsidiaries"). Other investors own the remaining 6% of the equity interests in Engy Drums.

10. The Engy Subsidiaries in turn own interests in Engy Southwest Container Products, Inc., a steel drum production business ("Engy Containers"); Engy Belvoir Healthcare LLC, owner of a loan and option to buy a hospital ("Engy Healthcare"); and Mowery Plant, LLC, the entity that owns the land and the physical plant at which the steel drums are produced

("Engy Mowery Plant") (together with Engy Group and Engy Subsidiaries, the "Engy Group of Companies").

11. A shareholder dispute exists regarding ownership over the Engy Group of Companies. Francois-Stanislas Bellon ("Bellon"), the 100% member-owner of the Debtor as of April 14, 2015, claims ownership of the Engy Group of Companies under an Operating Agreement.

12. Matthew Orban ("Orban") and Kurt Orban Partners, LLC (collectively, "KOP") claim to be owners of the Engy Group of Companies by virtue of defaults under certain loan and security agreements.

## The Background Facts

13. Pursuant to an Amended and Restated Company Agreement of Engy Group, dated on or about November 30, 2016, but effective as of April 14, 2015 (the "Company Agreement"), Bellon is the 100% owner of all the member interests in the Debtor. Bellon is also the sole manager of the Debtor.

14. Bellon established the Engy Group of Companies as start-up ventures to (i) create and operate a full-line steel drum manufacturer located at 2425 Mowery Rd, Houston, Texas 77045, to serve the petrochemical business, and (ii) construct and operate a hospital located at 11500 Space Center Blvd., Houston, Texas 77059.

15. As new ventures, the Engy Group of Companies relied on investments from affluent domestic and international investors, working capital provided by Bellon, and in more recent times, trade credit from KOP and other suppliers as well as a secured loan from Green Bank, N.A. ("Green Bank") and Third Coast Bank, N.A. ("Third Coast").

16. Dr. Kenneth Lo, a physician and investor from Baton Rouge, Louisiana, is also an investor and a creditor of the Engy Group of Companies.

17. Orban, Bellon, Engy Drums, Engy Containers, and Green Bank are parties to a Credit Agreement, dated as of February 27, 2017 (the "Green Bank Loan") for an $8.0 million note and up to $5.0 million revolving note subject to an asset-based borrowing base. By virtue of the Green Bank Loan, Green Bank asserts perfected security interests in and to all the assets of Engy Drums and Engy Containers. All of the proceeds of the Green Bank Loan were paid directly to KOP.

18. Engy Mowery Plant owes Third Coast $6.2 million pursuant to a promissory note (the "Third Coast Loan"). The Third Coast Loan is secured by a perfected first lien and security interest in and to the assets of Engy Mowery Plant. On information and belief, Bellon and Orban guaranteed the Third Coast Loan.

19. The Engy Group of Compnies has made a loan of approximately $475,000 to Verdeen Chemicals (a/k/a Tersus), a lead-acid battery recycling business located at 4433 South Dr., Houston, Texas 77053.

20. The primary obligations of the Debtor are: (i) a disputed, unliquidated $3,700,000 promissory note in favor of KOP, dated on or about April 19, 2017 (the "Engy-KOP Note"); and (ii) amounts owed to creditors other than KOP, including Dr. Lo.

21. In addition to the Engy-KOP Note, KOP asserts a claim against non-debtor Engy Containers by virtue of a disputed, unliquidated promissory note made payable to KOP in the stated amount of $4,100,000, dated on or about April 19, 2017 (the "Containers-KOP Note"). KOP also asserts that it is owed an additional $3,000,000 by virtue of a disputed, unliquidated

claim against non-debtor Engy Ventures, dated on or about April 19, 2017 (the "Belvoir-KOP Claim").

22. KOP asserts that the Engy-KOP Note and Belvoir-KOP Claim are guaranteed by Bellon pursuant to a Guaranty Agreement dated April 19, 2017 and are secured in part by that certain Pledge and Security Agreement dated April 19, 2017 executed by Bellon in favor of KOP with Bellon's rights, title and interest to and under the Company Agreement as collateral.

23. Bellon disputes the amount, validity and allowability of the Engy-KOP Note, Containers-KOP Note and the Belvoir-KOP Claim (collectively, the "KOP Claims"). Among other things, Bellon asserts that the KOP Claims were not in fact loans at all, alleges that the KOP Claims involve usurious interest for which there are treble damages under Texas state law, believes he signed the KOP Claims under duress, disputes the amounts of the KOP Claims, and, therefore, asserts that the KOP Claims are not allowable claims against the Engy Group of Companies.

24. After the parties entered into the KOP Claims on April 19, 2017, the Engy Group of Companies was not able to repay the KOP Claims as of the stated maturity on July 19, 2017. Thereafter, KOP commenced actions to collect on the KOP Claims. In addition to seeking creditor remedies, Orban, acting on behalf of KOP, declared himself the rightful owner of the Debtor.

25. By notices provided in July 2017, KOP attempted to take control of the Engy Group of Companies. KOP attempted to terminate Bellon as an officer of the Engy Group of Companies, remove Bellon as Manager of the Engy Group of Companies, appoint Orban as officer and Manager of the Engy Group of Companies, exclude Bellon from the premises, restrict Bellon's access to his corporate email account, and instruct employees to cease communicating

with Bellon. KOP further directed Bellon not to enter the premises and purportedly divested Bellon of any rights to the Engy Group of Companies. KOP threatened to terminate the Chief Financial Officer of Engy Containers. KOP also scheduled a judicial private sale of Bellon's pledged shares in and to the Engy Group for 2:00 p.m. on Monday, August 14, 2017, at the offices of Gray Reed & McGraw LLP (the "Foreclosure Auction").[1]  Bellon disputes all of these actions by KOP.

26. On or about March 3, 2017, KOP executed a sales agreement relating to 2010 tons of various kinds of steel to be delivered to Engy Containers on May 17, 2017.  As of July 19, 2017, only 30 tons of steel had been made available to Engy Containers with the remainder of the steel presumably being held in a local warehouse by KOP.

27. Prior to the Petition Date, Bellon and KOP made intermittent efforts to resolve the dispute.  Since the Petition Date, the professionals have urged Bellon and KOP to mediate and resolve the dispute through negotiations and a business solution. Instead, the parties have been deadlocked in fights over the ownership of the Engy Group of Companies, positions have hardened, trust has disappeared, and negotiations have stalled.  Indeed, a hostile situation developed last week which could have resulted in physical injuries to Bellon.

28. On August 9, 2017, Green Bank issued a Notice of Default to the Engy Group of Companies, Bellon and Orban that an event of default has occurred and is continuing.

29. On August 14, 2017, Bellon filed a voluntary petition under chapter 11 of the Bankruptcy Code (the "Bellon Bankruptcy").

30. The dispute over the ownership of the Engy Group is having an adverse effect on the ability of the Debtor to operate and manage what would otherwise be three subsidiary

---

[1] To stop the Foreclosure Auction, Bellon filed a chapter 11 petition with the Court on Monday, August 14, 2017. *See In re Francois Stanislas Bellon*, Case No. 17-34923.

companies that have value. Bellon believes that turning over the businesses to KOP would destroy value for all stakeholders. While his first preference would be to manage the businesses himself, Bellon supports the appointment of a chapter 11 trustee to clarify and stabilize the situation for employees, creditors, vendors, and investors.

31. To date, KOP has refused to cancel or abate the Foreclosure Auction. KOP insists upon Orban managing the Engy Group of Companies. As such, KOP opposes the appointment of a chapter 11 trustee. The Bellon Bankruptcy has stayed the Foreclosure Auction, pursuant to 11 U.S.C. § 362(a).

## Cause Exist to Appoint a Chapter 11 Trustee

32. The Bankruptcy Code is designed to allow a debtor-in-possession to retain management and control of the debtor's business operations. *See In re Eurospark Indus.*, 424 B.R. 621, 627 (Bankr. E.D. N.Y. 2010). It is well recognized, however, that a debtor-in-possession owes fiduciary duties to the bankruptcy estate including "the duty to protect and conserve property in its possession for the benefit of the creditors" and the duty to "refrain[ ] from acting in a manner which could damage the estate or hinder a successful reorganization of the business." *Matter of Cajun Elec. Power Coop., Inc.*, 191 B.R. 659, 661 (M.D. La. 1995), *decision vacated on other grounds*, 69 F.3d 746 (5th Cir. 1995), *opinion withdrawn on other grounds in part on reh'g*, 74 F.3d 599 (5th Cir. 1996), *and aff'd*, 74 F.3d 599 (5th Cir. 1996); *see also In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 169 (Bankr. S.D.N.Y. 1990) (quoting *In re Sharon Steel Corp.*, 86 B.R. 455, 457 (Bankr. W.D. Pa. 1988)). "The willingness of Congress to leave a debtor-in-possession is premised on an expectation that current management can be depended upon to carry out the fiduciary responsibilities of a trustee." *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 526 (Bankr. E.D.N.Y. 1989).

33. If a debtor-in-possession defaults in that respect, the debtor may be dispossessed of its officer and alternative management may be appointed in the form of a Chapter 11 trustee. *See Schuster v. Dragone*, 266 B.R. 268, 271 (D. Conn. 2001).

34. Section 1104(a) of the Bankruptcy Code provides that:

(a) . . . on request of a party in interest or the United States Trustee, and after notice and a hearing, the Court shall order the appointment of a trustee –

> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of the assets or liabilities of the debtor; or

> (2) if such appointment is in the interest of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a).

35. Determining whether "cause exists to appoint a chapter 11 trustee is highly fact-intensive and requires the court to consider 'whether the totality of the circumstances warrant[s] appointment of a trustee.'" *In re ATP Oil & Gas Corp. ("ATP")*, No. 12-36187, 2013 WL 9792582, at *8 (Bankr. S.D. Tex. Feb. 10, 2013) (quoting *In re Sundale, Ltd.*, 400 B.R. 890, 900 (Bankr. S.D. Fla. 2009)).

36. In the Fifth Circuit, a party moving for the appointment of a trustee must demonstrate cause under § 1104(a)(1) by clear and convincing evidence. *Matter of Cajun Elec. Power Coop., Inc.*, 69 F.3d 746, 749 (5th Cir. 1995); *see also In re Bayou Group, LLC*, 564 F.3d 541, 546 (2d Cir. 2009); *In re Euro-American Lodging Corp.*, 365 B.R. 421, 426 (Bankr. S.D.N.Y. 2007). Once that burden is met, however, appointment of a trustee becomes mandatory. 11 U.S.C. § 1104(a) (providing that court "shall order" appointment of trustee where

cause exists); *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. at 525 (holding that where a court finds cause under § 1104, "there is no discretion; an independent trustee must be appointed").

37. In this case, there are three separate grounds for the appointment of a trustee under § 1104(a)(1): (a) the prepetition dispute over the ownership of Engy Group having a detrimental effect on the business of the Engy Group of Companies; (b) the postpetition continuing dispute between Bellon and KOP having a detrimental effect on the ability to operate a business for the benefit of creditors and equity interests; and (c) allegations that Bellon and Obran improperly exercised rights over the Engy Group.

### (i) Cause Is Established Under 11 U.S.C. § 1104(a)(1)

38. "Cause exists under § 1104(a)(1) when the debtor engages in conduct such as fraud, dishonesty, incompetence, gross mismanagement, or similar cause." *In re Cajun Elec. Power Co-op., Inc.*, 191 B.R. at 661; *see also In re 1031 Tax Group, LLC*, 374 B.R. 78, 86 (Bankr. S. D.N.Y. 2007) ("A court may consider both the pre- and postpetition misconduct of the current management when making the determination that 'cause' exists for the appointment of a trustee.").

39. The list of wrongs constituting "cause" warranting the appointment of a trustee is non-exclusive. *In re Cajun Elec. Power Co-op., Inc.*, 191 B.R. at 661 ("It is clear that the grounds for cause are not limited to those enumerated in section 1104(a)(1)"); *In re Oklahoma Refining Co.*, 838 F.2d 1133, 1136 (10th Cir. 1988) (the "court need not find any of the enumerated wrongs to find cause for appointing a trustee"). "Factors relevant to the appointment of a trustee under § 1104(a)(1) include: allegations of conflicts of interest, including inappropriate relations between corporate parents and the subsidiaries; alleged misuse of assets and funds; alleged inadequate record keeping and reporting; various instances of conduct found

to establish fraud or dishonesty; and lack of credibility and creditor confidence." *In re Altman*, 230 B.R. 6, 16 (Bankr. D. Conn. 1999), *aff'd in part, vacated in part*, 254 B.R. 509 (D. Conn. 2000). Disputes over the management of a debtor can constitute "cause" under § 1104(a)(1). *In re New Towne Dev., LLC*, 404 B.R. 140, 144 n.14 & 147 (Bankr. M.D. La. 2009) (finding that appointment of a chapter 11 trustee was warranted where an ownership dispute concerning a creditor who filed an involuntary petition against the debtor effectively paralyzed the debtor's management).

40. This case is replete with allegations by and between KOP and Bellon, each side arguing that the other is responsible for gross mismanagement, dishonesty, and fraud.

41. Although naked allegations of misconduct, standing alone, are an insufficient basis for the appointment of a trustee, it is not necessary for this Court to conduct a mini-trial of each of the factual allegations. Rather, appointment of a trustee is mandated if this Court determines that the allegations have a "substantial basis in the facts." *In re Am. Res., Ltd.*, 54 B.R. 245, 247 (Bankr. D. Hawaii 1985); *see also Tradex Corp. v. Morse*, 339 B.R. 823 (D. Mass. 2006) (finding, in a case decided under preponderance of the evidence standard, that bankruptcy court properly ordered appointment of trustee based on credible, though disputed, allegations against debtor that were the subject of a grand jury proceeding).

42. Debtor submits that sufficient cause exists for the appointment of a Chapter 11 trustee in this case pursuant to 11 U.S.C. § 1104(a)(1).

**(ii) Cause Is Established Under 11 U.S.C. § 1104(a)(2)**

43. Even if the Court finds that the Debtor has failed to demonstrate cause for the appointment of a trustee under § 1104(a)(1), a Chapter 11 Trustee would be in the best interests of creditors pursuant to § 1104(a)(2).

44. Section 1104(a)(2) of the Bankruptcy Code allows appointment of a trustee even when no "cause" exists. *See Sharon Steel*, 871 F.2d at 1226 (describing the standard as "flexible"); *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990). Under § 1104(a)(2), the Court may appoint a trustee, in its discretion, to address the "interests of the creditors, [ ] and other interests of the estate." 11 U.S.C. § 1104(a)(2). *See, e.g., Sharon Steel*, 871 F.2d at 1226.

45. Under § 1104(a)(2), courts should "'eschew rigid absolutes and look to the practical realities and necessities.'" *ATP*, 2013 WL 9792582, at *12 (quoting *In re Ionosphere Clubs, Inc.*, 113 B.R. at 168).

46. Among the factors considered by the courts in assessing motions brought under § 1104(a)(2) include: "(1) the trustworthiness of the debtor, (2) the debtor's past and present performance and prospects for rehabilitation, (3) the confidence or lack thereof of the business community and of creditors in present management, and (4) the benefits derived from the appointment of a trustee, balanced against the cost of the appointment." *Matter of Cajun Elec. Power Co-op, Inc.*, 191 B.R. at 661–62.

47. Here, the factors exist for the appointment of a Chapter 11 trustee under § 1104(a)(2). The Debtor's management has been, and continues to be, deadlocked. "When the board of directors of a corporation is effectively deadlocked, appointment of a trustee is in the best interest of the estate." *Matter of Tahkenitch Tree Farm P'ship*, 156 B.R. 525, 528 (Bankr. E.D. La. 1993) (citing *In re Advanced Elecs., Inc.*, 99 B.R. 249 (Bankr. M.D. Pa. 1989)). An independent trustee is necessary to ensure that the Debtor's business operations are being conducted in accordance with appropriate business standards and, most importantly, in accordance with the fiduciary duties owed to the creditor body.

48. Second, the appointment of a trustee is in the best interest of creditors because there is a substantial adversity of interest that exists. In fact, it appears that the Debtor lacks an independent management structure to analyze and pursue claims against its principals for the benefit of creditors. *See e.g., In re Ridgemour Meyer Props., LLC*, 413 B.R. 101, 113 (Bankr. S.D.N.Y. 2008) ("An independent trustee should be appointed under § 1104(a)(2) when they suffer from material conflicts of interest, and cannot be counted on to conduct independent investigations of questionable transactions in which they were involved.").

49. Third, some of the Debtor's major creditors, namely Green Bank and Dr. Lo, have lost confidence in the Debtor's management and support the appointment of a chapter 11 trustee. *In re Patman Drilling Int'l, Inc.*, No. 07-34622-SGJ, 2008 WL 724086, at *6 (N.D. Tex. Mar. 14, 2008) (finding that "cause" existed under § 1104(a)(2) when "the majority of the Debtor's creditor body [] lost confidence in the Debtor's management").

50. Fourth, given the negative press and charges that have been brought against the Debtor and its management, any investor should be reluctant to trust the "fox watching the henhouse."

51. Lastly, with respect to the benefits of a Chapter 11 trustee balanced against the cost of appointment, redressing the concern that the Debtor be managed by an untainted fiduciary outweighs the cost of appointment of a Chapter 11 trustee. Where, as here, the continuation of current management could result in further deadlock and destruction of value at the subsidiary level.

## Basis for Emergency Consideration

52. Unless this Court intervenes quickly and appoints a chapter 11 trustee to oversee the entities and the non-debtor subsidiary's operations, the Debtor is concerned that the dispute

will spill over, if it has not already, into the businesses which are wholly or indirectly owned by Engy Group.

## Conclusion

WHEREFORE, the Debtor respectfully requests that this Court (i) schedule an emergency hearing at such date and time as is convenient for the Court on the Motion, and, (ii) grant the Debtor such other and further relief as is just and proper.

Dated: August 14, 2017                              Respectfully submitted,

DIAMOND McCARTHY LLP

*/s/ Kyung S. Lee*
Kyung S. Lee
TBA No. 12128400
klee@diamondmccarthy.com
Charles M. Rubio
TBA No. 24083768
crubio@diamondmccarthy.com
Two Houston Center
909 Fannin, 37th Floor
Houston, TX 77010
Telephone: (713) 333-5100
Facsimile: (713) 333-5199

*Proposed Counsel for The Engy Group, LLC*