IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| THE ENGY GROUP, LLC | § | Case No. 17-34848 |
| | § | |
| Debtor. | § | (Chapter 11) |

**DEBTOR'S APPLICATION TO EMPLOY BVA GROUP RESTRUCTURING
AND ADVISORY LLC AS FINANCIAL ADVISOR TO
FOR THE DEBTOR AND DEBTOR-IN-POSSESSION**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.
IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT
THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE
MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND
SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE
YOUR RESPONSE WITHIN 23 DAYS OF THE DATE THIS WAS SERVED
ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD
NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE
RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF
YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN
AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE
PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE
AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:

The Engy Group, LLC (the "Debtor") files this *Application to Employ BVA Group*

*Restructuring and Advisory LLC as Financial Advisor to the Debtor and Debtor-in-Possession*

(the "Application"), and the Declaration of Jeffrey Anapolsky ("Anapolsky Declaration"),

attached as Exhibit A hereto in support of the Application, and respectfully states as follows.

**Factual Background**

1.      The Debtor is a holding company that owns equity in Texas Engy Drums, LLC, a Texas limited liability company, and Engy Belvoir Ventures LLC, a Texas limited liability company.  These two entities in turn indirectly own interests in a steel drum business, a hospital, and real estate.

2.      This bankruptcy case (the "Chapter 11 Case") was filed on August 8, 2017 (the "Petition Date").

3.      There is no committee or trustee appointed in this Chapter 11 Case.

**Jurisdiction and Venue**

4.      This Court has jurisdiction over this Chapter 11 Case pursuant to 28 U.S.C. § 1334.

5.      This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

6.       Venue of the Debtor's Chapter 11 Case is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The statutory bases for the relief sought are §§ 327(a), 330, and 1107(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), rules 2014, 2016, and 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 2014-1 of the Local Rules for the U.S. Bankruptcy Court for the Southern District of Texas (the "Local Bankruptcy Rules").

**Relief Requested**

8.      The Debtor requests that the Court enter an order substantially in the form of the proposed order attached hereto authorizing the Debtor to retain BVA Group Restructuring and Advisory LLC ("BVA Restructuring") as financial advisor to the Debtor *nunc pro tunc* to the

Petition Date, pursuant to the terms of the engagement letter attached hereto as <u>Exhibit B</u> (the "<u>Engagement Letter</u>").

<b><u>Basis for Relief</u></b>

9.       Section 327(a) of the Bankruptcy Code authorizes a debtor-in-possession to employ professionals that do not hold or represent an interest adverse to its estate and that are disinterested persons to assist it with its duties under the Bankruptcy Code.   The Debtor's retention of BVA Restructuring is necessary to enable the Debtor to fulfill its duties under the Bankruptcy Code as a debtor-in-possession and is in the best interests of the Debtor's estate.

**A. BVA Restructuring's Qualifications**

10.       BVA Restructuring has substantial expertise and experience in all aspects of bankruptcy matters.   BVA Restructuring possesses the experience, ability, and resources necessary to provide the full range of financial advisory services the Debtor will need during the pendency of this Chapter 11 Case.

11.       BVA Restructuring is well acquainted with the Debtor's corporate history, debt structure, and business issues that will be critically important to the Debtor and its estate during this Chapter 11 Case.

12.       The Debtor believes that BVA Restructuring is qualified to provide the Debtor with efficient and effective financial services in this Chapter 11 Case.

**B. Scope of Services**

13.       BVA Restructuring will provide financial advisory services to the Debtor, including but not limited to the following:

       a.       reviewing and analyzing the Debtor's financials, assets, and operational data;

3

b.      understanding the financial implications of existing contractual arrangements and obligations with lenders, investors, vendors, advisors/consultants, and customers;

c.      assisting the Debtor in the preparation of financial projections and updating those projections as required;

d.      advising the Debtor with regards to the development and implementation of a chapter 11 plan;

e.      assisting the Debtor in managing key stakeholders, including communications and meetings with, and requests for information made by, creditor constituents, including secured lenders, vendors, customers, plaintiffs, and employees;

f.      assisting the Debtor with the preparation of a 13-week cash budget and updates thereto as needed;

g.      assisting the Debtor with preparation of schedules and statements for the bankruptcy process;

h.      supporting the Debtor and counsel in pursuing equitable subordination, recharacterization, and/or lender liability claims, as needed;

i.      providing expert testimony, as necessary;

j.      assisting the Debtor with arranging debtor-in-possession financing;

k.      preparing marketing materials for selling some or all assets of the Debtor to one or more investors as needed; and

l.      providing other financial advisory services consistent with BVA Restructuring's role as financial advisor and/or as requested by the Debtor and agreed to by BVA Restructuring.

## C. BVA Restructuring's Disinterestedness

14.     To the best of the Debtor's knowledge, the partners and other professionals at BVA Restructuring do not have any interest adverse to the Debtor or any connections with the Debtor, its creditors, directors, officers, or other significant parties in interest, or their respective attorneys and accountants.

15.     Based upon the Anapolsky Declaration, the Debtor submits that BVA Restructuring is a "disinterested person" as that term is defined in §§ 101(14) and 1107(b) of the Bankruptcy Code.

16.     Based on the Anapolsky Declaration, the Debtor believes that BVA Restructuring is in compliance with the requirements of §§ 327(a), 329 and 504 of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016.

D.  **BVA's Compensation**

17.     As discussed in the Anapolsky Declaration, BVA Restructuring received a $10,000 partial retainer on September 1, 2017 that was paid by an unaffiliated non-debtor.

18.     The Debtor understands that for services rendered following the Petition Date, BVA Restructuring intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, including but not limited to §§ 330 and 331 of the Bankruptcy Code, the Bankruptcy Rule, the Local Bankruptcy Rules, the guidelines (the "Guidelines") established by the United States Trustee for the Southern District of Texas (the "U.S. Trustee"), and orders of this Court in this Chapter 11 Case (the "Orders"), for all services performed and expenses incurred after the Petition Date.

19.     Subject to the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Guidelines and Orders, the Debtor proposes to pay BVA Restructuring its customary hourly rates for services rendered that are in effect from time to time, as set forth in the Anapolsky Declaration.   The Debtor submits that BVA Restructuring's customary terms of reimbursement, compensation, and hourly rates are reasonable.   BVA

5

Restructuring will notify the Debtor, and the U.S. Trustee of any change in the hourly rates charged by BVA Restructuring for services rendered while this Chapter 11 Case is pending.

20.     BVA Restructuring intends to seek reimbursement for expenses incurred in connection with its representation of the Debtor in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Guidelines or Orders.

**No Prior Request**

21.     No prior motion or application for the relief requested herein has been made to this Court or any other court.

**Conclusion**

WHEREFORE, the Debtor respectfully requests that this Court enter an order substantially in the form of the proposed order attached hereto and grant any other appropriate relief.

Dated: September 7, 2017                     Respectfully submitted,

DIAMOND McCARTHY LLP

*/s/ Charles M. Rubio*
Kyung S. Lee
TBA No. 12128400
klee@diamondmccarthy.com
Charles M. Rubio
TBA No. 24083768
crubio@diamondmccarthy.com
Two Houston Center
909 Fannin, 37th Floor
Houston, TX 77010
Telephone: (713) 333-5100
Facsimile: (713) 333-5199

*Proposed Counsel for The Engy Group, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by the Court's CM/ECF service to all parties registered to receive electronic notice in this case on the 7th day of September 2017.

_/s/ Charles M. Rubio_

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **THE ENGY GROUP, LLC** | § | **Case No. 17-34848** |
| | § | |
| Debtor. | § | **(Chapter 11)** |

**DECLARATION OF JEFFREY ANAPOLSKY IN SUPPORT OF**
**APPLICATION FOR ORDER AUTHORIZING THE DEBTOR**
**TO RETAIN BVA GROUP RESTRUCTURING AND ADVISORY LLC**
**TO PROVIDE FINANCIAL ADVISORY SERVICES**

I, Jeffrey Anapolsky, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true to the best of my knowledge:

1.      I am a managing director of BVA Group Restructuring and Advisory LLC ("BVA Restructuring"), a valuation and advisory firm with offices in Houston, Texas; Plano, Texas; and New York, New York.  I submit this declaration (the "Declaration") on behalf of BVA Restructuring in support of the Debtor's application for an order authorizing and approving the agreement to provide financial restructuring services to the Debtor (the "Application"),[1] under the terms and conditions set forth in the Application.  Except as otherwise noted, I have personal knowledge of the matters set forth herein.

2.      The statements set forth in this Declaration are based upon my personal knowledge, upon information and belief, and upon client-matter records kept in the ordinary course of business that were reviewed by me or other personnel of BVA Restructuring or its affiliates.

---

[1]      Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Application.

3.       BVA Restructuring is a valuation and advisory firm with significant experience in the field of restructuring and providing financial and operational guidance to companies in distressed situations. BVA Restructuring's professionals have provided services to debtors, creditors, and other constituents in numerous chapter 11 cases.

4.       Personally, I have extensive leadership experience and have worked with a broad range of companies covering all aspects of turnaround, crisis management, and financial advisory situations.    My restructuring experience includes advising companies on chapter 11 reorganizations and out-of-court restructurings, including services relating to working capital management, debt capacity, balance sheet restructuring, post-petition financing, asset sales, capital expenditures, and business plan analysis.

## Disinterestedness and Eligibility

5.       In connection with the preparation of this Declaration, BVA Restructuring and I conducted an analysis to determine whether BVA Restructuring holds or represents any known interests adverse to the Debtor.  The analysis included a review of the list of creditors, equity security holders and other parties in interest attached hereto as Exhibit 1.

6.       To the best of my knowledge, BVA Restructuring does not have conflicts or relationships that would impair or preclude its ability to serve the Debtor pursuant to the Engagement Letter attached to the Application as Exhibit 2.

7.       BVA Restructuring has undertaken a search to determine and disclose whether it or its affiliates are or have been employed by, or have other relationships with, the Debtor, its significant creditors, professionals or other entities with significant relationships with the Debtor.

2

8.      I am not aware of any connection between myself, or the personnel of BVA Restructuring or its affiliates who are anticipated to assist me in the role of financial advisor for the Debtor's chapter 11 case and the Debtor.

9.      BVA Restructuring does not believe it is a "creditor" of the Debtor within the meaning of § 101(10) of the Bankruptcy Code.

10.     Further, neither I nor any member of the BVA Restructuring engagement team serving the Debtor, to the best of my knowledge, is a holder of any of the Debtor's debt or equity securities.

11.     To the best of my knowledge, no employee of BVA Restructuring is a relative of any judge of the bankruptcy court for this district or the United States Trustee in this district.

12.     Further, to the best of my knowledge, except as provided herein, BVA Restructuring is a "disinterested person" as that term is defined in § 101(14) of the Bankruptcy Code, in that BVA Restructuring (i) is not a creditor, equity security holder, or insider of the Debtor, (ii) was not, within two years before the date of filing of the Debtor's chapter 11 petition, a director, officer, or employee of the Debtor; and (iii) does not have an interest materially adverse to the interest of the Debtor's estate or of any class of creditors or equity security holders.

13.     In addition, to the best of my knowledge and based upon the results of the relationship search described above and disclosed herein, BVA Restructuring neither holds nor represents an interest adverse to the Debtor.

14.     If any new material relevant facts or relationships are discovered or arise, BVA Restructuring will promptly file a supplemental declaration.

**Services to Be Provided**

15.     BVA Restructuring will perform activities and services to oversee the Debtor's

chapter 11 process.  BVA Restructuring will provide the following services to the Debtor:

      a.    Review and analyze Debtor's financials, assets, and operational data;

      b.    Gain an understanding of the financial implications of existing contractual arrangements and obligations with lenders, investors, vendors, advisors/consultants, and customers;

      c.    Assist the Debtor in the preparation of financial projections and updating those projections as required;

      d.    Advise the Debtor with regards to the development and implementation of a chapter 11 plan of reorganization;

      e.    Assist the Debtor in managing key stakeholders, including communications and meetings with, and requests for information made by, creditor constituents, including secured lenders, vendors, customers, plaintiffs, and employees;

      f.    Assist the Debtor with the preparation of a 13-week cash budget and updates thereto as needed;

      g.    Assist the Debtor with preparation of schedules and statements for the bankruptcy process;

      h.    Support the Debtor and counsel in pursuing equitable subordination, recharacterization, and/or lender liability claims, as needed;

      i.    Provide expert testimony, as necessary;

      j.    Assist the Debtor with arranging debtor-in-possession financing;

      k.    Prepare marketing materials for selling some or all assets of the Debtor to one or more investors as needed; and

      l.    Provide other financial advisory services consistent with BVA Restructuring's role as financial advisor and/or as requested by the Debtor and agreed to by BVA Restructuring.

16.     These services are necessary to the Debtor's restructuring efforts and to the ongoing

operations of the Debtor's business while subject to chapter 11 of the Bankruptcy Code.

## **Professional Compensation**

17.     Subject to Court approval and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, applicable United States Trustee guidelines, and the local rules of this Court, BVA Restructuring will seek from the Debtor payment for compensation on an hourly basis, and reimbursement of actual and necessary expenses incurred by BVA Restructuring. BVA Restructuring's customary hourly rates as charged in bankruptcy and non-bankruptcy matters of this type by the professionals assigned to this engagement are as follows:

| Name | Hourly Rate |
|---|---|
| Jeffrey Anapolsky | $650 |
| Dave Matthiesen | $525 |
| Alex Clinton | $475 |
| Justin Peden | $400 |
| Financial Analysts | $350 |

18.     These hourly rates are subject to increase at the end of each calendar year.

19.     BVA Restructuring will also seek reimbursement for reasonable out-of-pocket expenses incurred in connection with this chapter 11 case.

20.     To the best of my knowledge, (a) no commitments have been made or received by BVA Restructuring with respect to compensation or payment in connection with these cases other than in accordance with applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, and (b) BVA Restructuring has no agreement with any other entity to share with such entity any compensation received by BVA Restructuring in connection with this chapter 11 case.

21.     BVA Restructuring received a $10,000 partial retainer on September 1, 2017 that was paid by an unaffiliated non-debtor. Any amount of any retainer that remains after payment in full of all outstanding invoices at the conclusion of the engagement will be returned to the Debtor.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September $\underline{5}$, 2017.

_____
Jeffrey Anapolsky

**EXHIBIT 1**

**List of Parties in Interest**

Engy Group LLC Parties-in-Interest List

Debtor

The Engy Group LLC

Affiliates/Subsidiaries of Debtor

Engy Belvoir Ventures LLC
Engy Belvoir Healthcare LLC
Texas Engy Drums LLC
Engy Southwest Container Products, Inc.
Mowery Plan LLC

Principal of the Debtor

Francois-Stanislas Bellon

Creditors and Other Parties-in-Interest

Kurt Orban Partners, LLC
Partners-in-Steel, LLC
JIS Services, LLC
Metal X, LLC
Southwest Container Products, LLC
Sacred Oak Medical Center, LLC
Matthew Orban
Richard Young
Gray Reed LLP
Green Bank, N.A.
Third Coast Bank, SSB
Dr. Kenneth Lo
Richard C. Killough
Murrah & Killough, PLLC
American Express
William V. Walker, Esq.

U.S. Trustee's Office

Christine March
Diane Livingstone
Jacqueline Boykin
Hector Duran
Barbara Griffin
Luci Johnson-Davis
Linda Motton
Glenn Otto
Patricia Schmidt
Gwen Smith
Stephen Statham
Clarissa Waxton

# EXHIBIT B



Valuation.
Damages.
Advisory.

| 7250 Dallas Parkway | 1000 Louisiana Street | 366 Madison Avenue |
| Suite 200 | Suite 6925 | Fourth Floor |
| Plano, Texas 75024 | Houston, Texas 77002 | New York, New York 10017 |
| 972.377.0300 | 713.457.3125 | 212.364.1926 |

August 7, 2017


The Engy Group, LLC
c/o Mr. Kyung S. Lee, Esq.
Diamond McCarthy LLP
909 Fannin, 37th Floor
Houston, TX 77010

Re:     Engagement of BVA Restructuring as Financial Advisor for The Engy Group, LLC

Dear Mr. Lee:

Thank you for the opportunity to work with you.  This letter (the "Agreement") formalizes the agreement between (i) The Engy Group, LLC, on behalf of itself and its subsidiaries[1] (collectively, the "Debtors" or "Client") and (ii) BVA Group Restructuring and Advisory LLC ("BVA Restructuring"), involving the scope of engagement, as described in paragraph A below, under the fee arrangement, as described in paragraph B below (overall, the "Engagement").  The parties to the Engagement understand that the services provided and the subject matter of this Engagement may change and include other issues as mutually agreed or, in the event that the Debtors need to commence an insolvency proceeding, ordered by a court of competent jurisdiction.

For the avoidance of doubt, BVA Restructuring is not being engaged on behalf of Francois-Stanislas Bellon, Matthew Orban, Kurt Orban Partners, Kenneth Lo, Richard Young, Filemon Lopez, Brian Hart, Castille Consulting LLC, Sacred Oak Medical Center, Green Bank, Third Coast Bank, or any other party in interest. BVA Restructuring and its affiliates are qualified to provide disinterested, neutral, objective advice to Client without bias for or against any party in interest.

A.  Scope of the Engagement

Client seeks to retain BVA Restructuring to provide financial advisory and restructuring services, including:

1.  Review and analyze Client's financials, assets, and operational data;
2.  Gain an understanding of the financial implications of existing contractual arrangements and obligations with lenders, investors, vendors, advisors/consultants, and customers;
3.  Assist Client in the preparation of financial projections and updating those projections as required;
4.  Advise Client with regards to the development and implementation of a restructuring plan for an out-of-court workout or a Ch. 11 plan of reorganization;
5.  Assist Client in managing key stakeholders, including communications and meetings with, and requests for information made by, creditor constituents, including secured lenders, vendors, customers, plaintiffs, and employees;
6.  Assist Client with preparations for a potential Chapter 11 filing in the event that the Debtors need to seek bankruptcy protection, including the preparation of first day motions and exhibits thereto;
7.  Assist Client with preparation of a 13-week cash budget and updates thereto;

---

[1] Subsidiaries of The Engy Group, LLC include:  Engy Belvoir Ventures LLC, Engy Properties LLC, Engy Belvoir Healthcare LLC, Texas Engy Drums LLC, Texas Engy Drums II LLC, Engy Southwest Container Products, Inc., and Mowery Plant, LLC.

THE ENGY GROUP, LLC
August 7, 2017
Page 2

8.  Assist Client with preparation of schedules and statements for the bankruptcy process;
9.  Support Client and counsel in pursuing equitable subordination, recharacterization, and/or lender liability claims, as needed;
10. Provide expert testimony, as appropriate;
11. Assist Client with arranging debtor-in-possession financing or financing to facilitate an out-of-court workout;
12. Prepare marketing materials for selling some or all assets to one or more investors; and
13. Provide other financial advisory services consistent with BVA Restructuring's role as financial advisor and/or as requested by Client and agreed to by BVA Restructuring.

BVA Restructuring understands that Client is interested in obtaining objective and independent analysis in connection with this Engagement.  The services provided by BVA Restructuring are intended solely for Client's use in connection with the purposes specified in the Engagement and should not be used or relied upon for any other purpose.  Any written work product that BVA Restructuring prepares for Client is to be used solely for purposes of this Engagement and may not be published or used, in whole or in part, for any other purpose without BVA Restructuring's written permission.  BVA Restructuring will not be obligated to perform any services that are outside the scope of this Engagement.

It is understood and agreed that BVA Restructuring is not providing legal services, a legal opinion, actuarial services, or public accounting services[2] to Client or any other person or entity on any matters encompassed by this Agreement or otherwise.  Any financial services that BVA Restructuring or its professionals may provide will be in BVA Restructuring's role as financial advisor to Client.  BVA Restructuring will not be auditing any financial statements or performing attest procedures with respect to information in conjunction with this Engagement.  The services provided by BVA Restructuring are not designed, nor should they be relied upon, to identify weaknesses in internal controls, financial statement errors, irregularities, illegal acts or disclosure deficiencies.

It is understood and agreed that BVA Restructuring is an independent contractor and retains control over its own management and operation, including hiring and paying the wages or other compensation or its personnel, including contractors and consultants to BVA Restructuring, if any.  Unless expressly provided otherwise herein, this Agreement shall not be construed as an employment agreement.  No one on behalf of BVA Restructuring or its affiliates shall be considered to be a director, officer, member, manager, partner, control person, employee, representative, agent or insider of Client, unless expressly agreed to in writing signed by Client and BVA Restructuring.  As an independent contractor, BVA Restructuring may provide services to other BVA Restructuring clients in connection with unrelated matters.

B.  Fees & Payments

In regards to the services described herein, BVA Restructuring shall be compensated at the following hourly rates in 0.1 increments: $650 per hour for Jeff Anapolsky, $525 per hour for Dave Matthiesen, $475 per hour for Alex Clinton, $400 per hour for Justin Peden, and $350 per hour for financial analyst(s).  If needed,

---

[2] While BVA Restructuring and/or its affiliates employ CPAs, BVA Restructuring is not a CPA firm, and does not provide attest services, audits or other engagements in accordance with the AICPA Statements on Auditing Standards.

bvagroup

THE ENGY GROUP, LLC
August 7, 2017
Page 3

any additional personnel will be compensated at the following hourly rates in 0.1 increments: $500 to $775 per hour for executive-level personnel, $425 to $600 per hour for vice presidents or senior vice presidents, $300 to $475 per hour for analysts, and $190 to $250 per hour for paraprofessionals.

Rates are subject to increase at the end of each calendar year.  Client will reimburse BVA Restructuring for its reasonable and documented out-of-pocket expenses incurred by BVA Restructuring in connection with the services to be rendered under this Agreement.  BVA Restructuring has not provided any guarantee of any specific outcome.

In order to commence our Engagement, BVA Restructuring requires a retainer of $50,000. BVA Restructuring will commence work upon the later of the execution of this Agreement and receipt of the retainer.  BVA Restructuring retains the right to request incremental retainers as needed.

Client agrees to pay all fees and expenses of BVA Restructuring hereunder as promptly as practicable in accordance with the terms hereof.  If payment is delayed beyond such time, BVA Restructuring shall assess a late fee of 5% per invoice and interest at the highest rate allowable by law, retroactive to the date of the invoice.  All Debtors are jointly and severally liable for amounts owed to BVA Restructuring under this Agreement.  Prior to the commencement of an insolvency proceeding, Client agrees to pay any outstanding invoices from BVA Restructuring no later than 10 business days of receiving an invoice from BVA Restructuring.  Upon the commencement of an insolvency proceeding, BVA Restructuring agrees to submit one or more fee applications according to procedures, if any, to be established by a court of competent jurisdiction and Client agrees to pay all fees and expenses no later than 3 business days of entry of an order by a court of competent jurisdiction approving each fee application.

C.  Insolvency Proceeding

In the event that the Debtors decide to file voluntary bankruptcy petitions (or commence any insolvency proceeding), the Debtors agree to apply to the Bankruptcy Court (or other court of competent jurisdiction) for approval of BVA Restructuring's retention pursuant to this Agreement and employ reasonable best efforts to obtain a final, non-appealable order from the Bankruptcy Court  (or other court of competent jurisdiction) approving and authorizing BVA Restructuring to serve as the Debtors' financial advisor on the terms of section B of this Agreement.  The Debtors shall supply BVA Restructuring with a draft of such application and any proposed order authorizing BVA Restructuring's retention sufficiently in advance of the filing of such application and proposed order in order to enable BVA Restructuring and its counsel to review and comment thereon.  BVA Restructuring shall have no obligation to provide any services under this Agreement unless BVA Restructuring's retention under the terms of this Agreement is approved in the manner set forth above by final order of the Court that is reasonably acceptable to BVA Restructuring in all respects.

Client agrees that BVA Restructuring's compensation as set forth herein and payments made pursuant to the reimbursement and indemnification provisions of this Agreement shall be entitled to priority as administrative expenses under Sections 503(b)(1)(A) and 507(a)(1) of the Bankruptcy Code and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect pursuant to one or more financing orders entered by the Bankruptcy Court.

D.  Indemnification

Client shall indemnify, hold harmless, and defend BVA Restructuring and its affiliates and employees from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the

bvagroup

THE ENGY GROUP, LLC
August 7, 2017
Page 4

engagement of BVA Restructuring under this Agreement.  Client shall pay damages and expenses as incurred, including reasonable legal fees, expenses, and compensation for BVA Restructuring at its then-standard hourly rates.

E.  Controversy Resolution

Either party may terminate this Agreement at any time without further liability or obligation upon ten (10) days' prior written notice; provided, however, no such termination will affect BVA Restructuring's right to receive the applicable fees and expenses as described herein that have accrued and are payable prior to such termination but are unpaid.  Should the agreement be terminated for any reason by either party, BVA Restructuring will refund any unused portion of the retainer relative to the fees and expenses incurred through the date of termination.  THIS ENGAGEMENT AGREEMENT HAS BEEN EXECUTED UNDER, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF TEXAS, EXCEPT AS SUCH LAWS ARE PREEMPTED BY APPLICABLE FEDERAL LAWS.  TO THE EXTENT ALLOWED BY APPLICABLE LAW, ALL PARTIES TO THIS ENGAGEMENT AGREEMENT SUBMIT TO THE NON-EXCLUSIVE JURISDICTION OF ANY U.S. FEDERAL OR STATE COURT SITTING IN HARRIS COUNTY, TEXAS.  All parties constituting Client acknowledge that BVA Restructuring is based in Texas and if any parties constituting Client reside outside of Texas, any such parties agree that such Harris County Federal Courts shall have personal jurisdiction over any such parties constituting Client.  The non-prevailing party shall pay all costs and expenses, including reasonable attorneys' fees and all collection costs incurred by the prevailing party in successfully (a) enforcing any of the terms of this Agreement against the non-prevailing party, or (b) proving that the non-prevailing party breached any of the terms of this Agreement.  If any party seeks to enforce the terms of this Agreement and is not successful and does not recover any legal or equitable relief on its claims (i.e., is the non-prevailing party), then the prevailing party (i.e., the party who successfully defended against the other party's claims) shall recover all its costs and expenses, including reasonable attorneys' fees.  BVA Restructuring's maximum aggregate liability relating to any claims made regarding the services provided by BVA Restructuring pursuant to this Agreement shall be limited to professional fees (excluding expenses) paid to BVA Restructuring for this assignment.  This limitation on liability shall extend to BVA Restructuring's officers, directors, members, employees, and/or contractors.

F.  Disclaimer of Perceived Conflicts and Related Business Relationships

BVA Restructuring has attempted to determine its past and present connections with Client, its creditors, partners, attorneys, or accountants.  Based upon that investigation, there does not currently exist a conflict of interest and BVA Restructuring shall provide prompt notice to Client if a conflict of interest is expected to arise.  Considering that Client and BVA Restructuring were introduced by a potential buyer of some or all of Client's assets, Client agrees that BVA Restructuring's relationship with such party does not present any conflict of interest.

From time to time, BVA Restructuring may include certain information about BVA Restructuring's relationship with its clients in information provided to third parties, such as presentations to prospective clients.  This information may include Client's name, a brief description of its business, and/or a description of projects.  By signing this Agreement, Client consents to BVA Restructuring's disclosure of such information about BVA Restructuring's relationship with Client, subject to any confidentiality requirements.  BVA Restructuring will not disclose any confidential or proprietary information about Client.

bvagroup

THE ENGY GROUP, LLC
August 7, 2017
Page 5


This Agreement (i) outlines all the terms of our agreement, (ii) supersedes any oral agreement, promise, and/or understanding, and (iii) may only be amended by written agreement or, if applicable, order of the Bankruptcy Court.

We look forward to working with you.

Very truly yours,

BVA GROUP RESTRUCTURING AND ADVISORY LLC

Jeffrey Anapolsky
Managing Director



AGREED AND ACCEPTED on this 7th day of August 2017;

THE ENGY GROUP, LLC


By:       _____

Title:    _Stash Bellon, MANAGER_
Printed
Name:     _____



JA:tw