## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| THE ENGY GROUP, LLC, | § | Case No. 17-34848 |
| | § | |
| Debtor. | § | (Chapter 11) |
| | § | |

| | | |
|---|---|---|
| | § | |
| In re: | § | |
| | § | |
| FRANCOIS STANISLAS BELLON, | § | Case No. 17-34923 |
| | § | |
| Debtor. | § | (Chapter 11) |

**ENGY GROUP LLC'S AND FRANCOIS STANISLAS BELLON'S EMERGENCY MOTION UNDER 11 U.S.C. §§ 105(a) AND 363, BANKRUPTCY RULES 6004 AND 9019 AND LOCAL RULE 9013-1 FOR APPROVAL OF AMENDED AND RESTATED BINDING TERM SHEET FOR SETTLEMENT AND REQUEST FOR EMERGENCY <u>HEARING TO BE HELD ON FEBRUARY 8, 2018 AT 2:00 P.M.</u>**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED; YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE MARIVIN ISGUR:

Engy Group, LLC ("Engy"), Francois Stanislas Bellon ("Bellon") (collectively "Debtors") and the other parties to the Amended and Restated Binding Term Sheet for Settlement[1] (the "Amended and Restated Settlement Term Sheet") file this emergency motion (the "Motion") for entry of an order substantially in the form attached hereto (the "Proposed Order"), pursuant to §§ 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Bankruptcy Local Rule for the United States Bankruptcy Court for the Southern District of Texas ("Local Rule") 9013-1 for Bankruptcy Court approval of the Amended and Restated Settlement Term Sheet and respectfully state as follows:

**EMERGENCY NATURE OF THE MOTION**

1.      On October 27, 2017, the Court entered its Order Approving Engy Group LLC's Expedited Motion under 11 U.S.C. §§ 105(a) and 363, Bankruptcy Rules 6004 and 9019 and Local Rule 9013-1 for Approval of Binding Term Sheet for Settlement (Doc. 73). As more fully discussed below, the Debtors failed to comply with the terms set forth in the term sheet attached to Doc. 73 (the "Original Term Sheet"), which provided for certain remedies to Green Bank as

---

[1] Amended and Restated Binding Term Sheet for Settlement of Claims by and Against Kurt Orban Partners, Southwest Container Products LLC and Matt Orban; Francois Stanislas Bellon; Dr. Kenneth Lo; and the Engy Group LLC and its Subsidiaries and Affiliates, dated January 31, 2018 (the "Amended and Restated Settlement Term Sheet"), attached to the form of order and incorporated herein as if fully set out herein.

well as Kurt Orban Partners, Matt Orban and SWCP, LLC (collectively, "SWCP LLC"). However, rather than exercising those remedies, the parties agreed to negotiate the Amended and Restated Settlement Term Sheet. SWCP LLC's deadline to obtain court approval of the Amended and Restated Settlement Term Sheet is February 8, 2018. If the deadline is not met, SWCP LLC will exercise the remedies set forth in the Original Term Sheet. Due to changed circumstances, all parties to the Original Term Sheet believe it is in the best interest of the Debtors, the creditors and the estates for the Court to approve the Amended and Restated Settlement Term Sheet rather than having SWCP LLC exercise the remedies under the Original Term Sheet.

2.      Therefore, Debtors request a hearing to be held on February 8, 2018, at the same time as Debtors' Motion Under 11 U.S.C. §305(a)(1) and Bankruptcy Rule 1017(D) to Suspend all Proceedings in these Chapter 11 Cases (Doc. 79).

## JURISDICTION AND VENUE

3.      This Bankruptcy Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), and (O). All the parties to the Settlement Term Sheet consents to the entry of a final order by the Bankruptcy Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

4.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105(a) and 363, Federal Rules of Bankruptcy Procedure 6004 and 9019, and Local Rule 9013-1.

6.      In the event the Bankruptcy Court does not approve the Motion, none of the recitations in this Motion shall be held or used against any party hereto in any future litigation.

## FACTUAL BACKGROUND

7.     Engy is a holding company whose primary assets consist of various interests in a business that operate a factory which manufactures steel drums and a behavioral health facility.

8.     In view of a dispute over the amount Engy owed SWCP LLC as well as management, Engy filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court") on August 4, 2017.

9.      Bellon is the majority owner of Engy.  On August 14, 2017, Bellon filed his petition under Chapter 11 of the Bankruptcy Code to impose the automatic stay for the purpose of preventing SWCP LLC from foreclosing on his ownership interest in Engy.

10.     A lengthy and detailed discussion of the facts and various businesses associated with these Chapter 11 cases can be found in Debtors' Expedited Motion Under 11 U.S.C. §§ 105(a) and 363, Bankruptcy Rules 6005 and 9091 and Local Rule 9013-1 for Approval of Binding Term Sheet for Settlement (Doc. 62).

11.     Doc. 62 sought approval of the Original Term Sheet, as a means to resolve various disputes between and among SWCP LLC, Bellon, Engy, the other Engy-related entities referenced therein, and Green Bank which was the primary lender to the steel drum business. The resolution was approved by the Bankruptcy Court in Doc. 73.

12.     Doc. 73 required, among other things, payment to SWCP LLC of $3 million no later than December 15, 2017.  In addition, on this same date, Bellon was to provide Green Bank with a letter of credit in an amount equal to the then outstanding Green Bank Debt or a valid stock pledge with a market value equal to at least 120% of the outstanding Green Bank Debt. The remedies for these defaults were Green Bank foreclosing on the steel drum business and

SWCP LLC foreclosing its security interest in Bellon's ownership interest in Engy.

13.     Prior to December 15, 2017, it became clear that neither of these obligations could be timely met.  Due to the Debtor's inability to meet its obligations under the Original Term Sheet, the parties commenced negotiations for an alternate resolution as a means to avoid an exercise of remedies and all that would have cascaded from the same. In connection with, and as a result of, those negotiations, several things happened.  First, Dr. Lo essentially purchased the entirety of the Green Bank debt to prevent Green Bank from foreclosing on the valuable steel drum manufacturing business.  Second, SWCP LLC agreed to give up any claim to the steel drum business and the required payments from the Debtor and Bellon, and accept in exchange a transfer of (i) the so-called "option" held by Engy Belvoir Healthcare ("Healthcare") relating to a behavioral health facility in the process of being completed in Houston and (ii) a certain percentage of Healthcare's interest in Sacred Oak Medical Center LLC, the entity that operates the behavioral health facility referred to in (i) above.   The agreements and transactions resulting from these negotiations are reflected in the Amended and Restated Settlement Term Sheet.

14.     As with the previous settlement, the Amended and Restated Settlement Term Sheet does not provide for the discharge of the debt any creditor who is not a party, and the claims of all such creditors are preserved.

15.     The precise terms of the settlement are set forth in the Amended and Restated Term Sheet attached hereto.

## APPLICABLE LAW SUPPORTING APPROVAL OF THE SETTLEMENT

16.     Congress explicitly provided mechanisms in the Bankruptcy Code to encourage settlements. "One of the goals of Congress in fashioning the Bankruptcy Code was to encourage parties in a distress situation to work out a deal among themselves." *In re Mirant Corp*., 334 B.R.

800, 811 (Bankr. N.D. Tex. 2005). "Compromises are favored in bankruptcy" because they minimize litigation costs and further the parties' interest in expediting the administration of a bankruptcy case. *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. Rev. 1993)).

17.     Bankruptcy Rule 9019 governs the procedural requirements to be followed before a settlement may be approved. Bankruptcy Rule 9019(a) provides in relevant part that: "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement." FED. R. BANKR. P. 9019(a). Bankruptcy Rule 9019(a) empowers a bankruptcy court to approve compromises and settlements if they are "fair and equitable and in the best interest of the estate." *In re Cajun Elec. Power Coop., Inc*., 119 F.3d 349, 355 (5th Cir. 1997); *In re Foster Mortgage Corp*., 68 F.3d 914, 917 (5th Cir. 1995). Moreover, Bankruptcy Code section 105(a) provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

18.     Approval of a proposed settlement is left to the sound discretion of the reviewing court. *See, e.g., In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998) (noting that courts should exercise their discretion "in light of the general public policy favoring settlements"). The burden of establishing the fairness of a compromise rests on the proponent(s) of the compromise; however, a debtor is not required to present a full mini-trial or evidentiary hearing to adjudicate the issues being settled. Rather, when determining whether to approve a compromise, the court "is not to decide the numerous questions of law and fact raised" by the compromise, but is "to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re W.T. Grant Co*., 699 F.2d 599, 608 (2d Cir. 1983)

(internal citations omitted); *In re Mirant Corp.*, 348 B.R. 725, 743 (Bankr. N.D. Tex. 2006).

19.     A bankruptcy court should approve a settlement under Rule 9019 if the settlement is within a range of reasonableness, fair and equitable, and in the best interest of the bankruptcy estate. "In deciding whether a settlement of litigation is fair and equitable, a judge in bankruptcy must make a well- informed decision, comparing the terms of the compromise with the likely rewards of litigation." *In re Cajun Elec. Power Co-op., Inc.,* 119 F.3d 349, 356 (5th Cir. 1997) (citations omitted); *see also Protective Committee for Independent Stockholders of TMT Trailer Ferry v. Anderson,* 390 U.S. 414 (1968); *United States v. AWECO, Inc. (In re AWECO, Inc.), 725 F.2d 293* (5th Cir. 1984); *Rivercity v. Herpel (In re Jackson Brewing Co.), 624 F.2d 599 (5th Cir. 1980).* Moreover, a bankruptcy court need not be convinced that the proposed settlement is the best possible, but "need only conclude that the settlement falls within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness." *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 833 (Bankr. D. Del. 2008).

20.     The Fifth Circuit has directed that, in determining whether to approve a proposed settlement, a Bankruptcy Court must evaluate the following factors: (1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise. *In re Age Refining, Incorporated, 801 F.3d 530 (5th Cir. 2015); In re Jackson Brewing Co., 624 F.2d at 602.*

21.     Under the third, catch-all provision, the Fifth Circuit has specified two additional factors. First, the court should consider the best interests of the creditors, "with proper deference to their reasonable views." *In re Foster Mortgage Corp.*, 68 F.3d 914, 917 (5th Cir. 1996). Second, the court should consider "the extent to which the settlement is truly the product of

arms-length bargaining, and not of fraud or collusion." *Id*. at 918 (internal citations omitted).

22.     Engy believes that the proposed settlement satisfies the requirements established by the Supreme Court in *TMT Trailer* and further defined by the Fifth Circuit Court of Appeals.

**VI**.

**ANALYSIS OF PROPOSED COMPROMISE**

23.     **The Settlement Falls Within the Range of Reasonableness.** Engy and Bellon have weighed the reasonableness factors for purposes of Bankruptcy Rule 9019 and submit that the agreements set out in the Amended and Restated Settlement Term Sheet fall within the range of reasonableness. More importantly, the agreements embodied in the Amended and Restated Settlement Term Sheet provide for infusion of new capital by Dr. Lo, and for Dr. Lo as the holder of the Green Bank to forbear and thereby save the valuable steel drum manufacturing business.

24.     **The Probability of Success in the Litigation, with Due Consideration for the Uncertainty in Fact and Law.**  In view of the defaults noted above, Engy would likely lose all of its assets and Bellon would likely lose all of his interests in Engy.  The Amended and Restated Settlement Term Sheet provides for continuation of the drum manufacturing business, retention of the employees and Bellon retains an interest therein, while also providing for a "business divorce" of SWCP LLC from Bellon on terms acceptable to the parties.

25.     Resolving the dispute now allows Engy and Bellon to ensure tangible and immediate benefit to their estates. The entry into the settlement will allow the parties to resolve the raison d'être for the two bankruptcy filings. The settlement will also allow for resolution of the chapter 11 cases such that the only remaining activity of the estate will be to monitor the implementation of the settlement and enforce any violation of the Amended and Restated

Settlement Term Sheet.

26.     **All Other Factors Bearing on the Wisdom of the Compromise**.

    a.    **Collection Risk**. The Amended and Restated Settlement Term Sheet provides for the exchange of various interests noted above in lieu of payments, except for the $1,050,000 Bellon is required to pay to Dr. Lo in one year. Therefore, the collection/payment risks provided for in the original settlement are virtually eliminated.

    b.    **Views of the Creditors**. Under the catch-all provision, the Fifth Circuit has directed the courts to consider the best interest of the creditors, "with proper deference to their reasonable views". SWCP LLC and Dr. Lo hold claims that comprise more than 85% of the debt against Engy and Bellon.  Therefore, the vast majority of creditors in both of these cases support approval of the settlement. Moreover, as stated above, the claims of other creditors are not affected.

    c.    **Nature of Negotiations.**   Again, under the catch-all provision, the Fifth Circuit directs the courts to consider "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." The settlement is the product of arm's length negotiations among the parties, all of which are represented by counsel, and negotiated over an extended period of time. The parties worked together to draft the Amended and Restated Settlement Term Sheet line by line over a multi-week period, negotiating every word and punctuation mark in the document. These negotiations were truly arms-length and held in good faith.

d.  **The Releases are Reasonable.**  The settlement requires Engy, Bellon and the other parties to execute and deliver mutual releases. Section 363(b)(1) of the Bankruptcy Code provides that a debtor may use property of the estate other than in the ordinary course of business when there is a "sound business purpose" that justifies such use of estate property. See *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999). Once the debtor articulates a valid business justification for a particular form of relief, the Bankruptcy Court should review the request under the deferential "business judgment" rule. The Bankruptcy Court should approve a debtor's business decision, unless it is the product of bad faith, whim or caprice. *In re HQ Global Holdings, Inc.,* 290 B.R. 507, 511 (Bankr. D. Del. 2003). Bankruptcy Code section 105(a) empowers the Bankruptcy Court to "issue any order, process, or judgment that is necessary to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a). Settling an estate claims represents the use of estate property and is justified here.

Moreover, the releases required under the settlement are reasonable in scope and necessary to accomplish the resolution of the claims against each other. Such releases should also not have an impact on potential direct claims held by non-settling parties. *See*, *e.g.*, *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 644 (Bankr. S.D.N.Y. 2012) (finding releases "reasonable and necessary to accomplish the purposes" of the settlement agreement where they did not impact potential direct claims by non-settling parties).

## VII.

## WAIVER OF BANKRUPTCY RULE 6004

27.     Engy and Bellon request that any order approving this Motion be effective immediately, thereby waiving the 14-day stay period imposed by Bankruptcy Rule 6004(h). This waiver of the 14-day stay period is necessary for the settlement to be implemented as expeditiously as possible and within the time frames contemplated by the Amended and Restated Settlement Term Sheet. Engy and Bellon request that the Bankruptcy Court eliminate the 14-day stay period imposed by Bankruptcy Rule 6004(h).

## VIII.

## NOTICE

28.     Notice of the Motion shall be given to all parties on the creditor matrix filed in both chapter 11 cases.

## CONCLUSION

29.     Engy and Bellon submit that the proposed compromise satisfies the requirements established under Bankruptcy Rule 9019, the Supreme Court in *TMT Trailer* and applicable Fifth Circuit law. In light of these considerations, Engy and Bellon believe that the proposed compromise falls well within the range of reasonableness, especially in light of the practical reality that "compromises are . . . often times desirable and wise methods of bringing to a close proceedings otherwise lengthy, complicated and costly." *Rivercity v. Herpel* (*In re Jackson Brewing Co.*), 624 F.2d 599, 602 (5th Cir. 1980) (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)). Engy and Bellon respectfully request that the Bankruptcy Court grant the relief requested in his Motion and approve the proposed compromise set out in the Amended and Restated Settlement Term Sheet.

WHEREFORE, Engy and Bellon respectfully request that the Bankruptcy Court enter an order in the form attached hereto (i) approving the settlement with the parties set out in the Amended and Restated Settlement Term Sheet, (ii) authorizing Engy, Bellon and the parties to the Amended and Restated Settlement Term Sheet to execute and deliver any agreements reasonably necessary to close and implement the Amended and Restate Settlement Term Sheet, and (ii) granting such other and further relief to which Engy may be entitled.

DATED: February 1, 2018

Respectfully submitted,

DIAMOND McCARTHY LLP

*/s/ Kyung S. Lee*
Kyung S. Lee
TBA No. 12128400
klee@diamondmccarthy.com
Charles M. Rubio
TBA No. 24083768
crubio@diamondmccarthy.com
Two Houston Center
909 Fannin, 37th Floor
Houston, TX 77010
Telephone: (713) 333-5100
Facsimile: (713) 333-5199

*Counsel for The Engy Group, LLC, debtor and debtor-in-possession*

HOOVER SLOVACEK LLP

By: */s/ Edward L. Rothberg*
Edward L. Rothberg
State Bar No. 17313990
Rothberg@hooverslovacek.com
Galleria Tower II
5051 Westheimer, Ste. 1200
Houston, TX 77056
Telephone:  (713) 977-8686
Facsimile:  (713) 977-5395

*Counsel for Francois Stanislas Bellon*

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that a true and correct copy of the foregoing was served by the Court's CM/ECF service to all parties registered to receive electronic notice in this case on the 1st day of February 2018 and by mail to all parties on the creditor matrix filed in both chapter 11 cases.

*/s/ Kyung S. Lee*         

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| THE ENGY GROUP, LLC, | § | Case No. 17-34848 |
| | § | |
| Debtor. | § | (Chapter 11) |
| | § | |

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| | § | |
| FRANCOIS STANISLAS BELLON, | § | Case No. 17-34923 |
| | § | |
| Debtor. | § | (Chapter 11) |

### ORDER APPROVING ENGY GROUP LLC'S AND FRANCOIS STANISLAS BELLON'S EMERGENCY MOTION UNDER 11 U.S.C. §§ 105(a) AND 363, BANKRUPTCY RULES 6004 AND 9019 AND LOCAL RULE 9013-1 FOR APPROVAL OF AMENDED AND RESTATED BINDING TERM SHEET FOR SETTLEMENT

Upon the emergency motion (the "Motion") of The Engy Group, LLC ("Engy"), Francois-Stanislas Bellon ("Bellon"), and the other parties to the Amended and Restated Binding Term Sheet for[1],[2] for entry of an order (this "Order"), approving the Amended and Restated Settlement Term Sheet, attached hereto as "Exhibit A" and incorporated herein as if fully set out herein, and taking all actions contemplated by and reasonably necessary to implement the settlement with the parties to the Amended and Restated Settlement Term Sheet as more fully set out in the Motion; and the Bankruptcy Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and the Bankruptcy Court having found that this is a core

---

[1] Binding Term Sheet for Settlement of Claims by and Against Kurt Orban Partners, Southwest Container Products LLC and Matthew Orban; Francois-Stanislas Bellon; Dr. Kenneth Lo; and the Engy Group LLC and its Subsidiaries and Affiliates, dated January 31, 2018 (the "Amended and Restated Settlement Term Sheet"), is attached hereto as Exhibit A, and incorporated herein by reference.

[2] Capitalized terms used by not defined herein have the meanings ascribed to such terms in the Motion or the Amended and Restated Settlement Term Sheet, as applicable.

proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Bankruptcy Court having found that the venue of these cases and the Motion in this district is proper pursuant to §§ 1408 and 1409; and the Bankruptcy Court having found that the relief requested in the Motion is in the best interest of Engy and Bellon's chapter 11 estates; and the Bankruptcy Court having found that Engy and Bellon provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Bankruptcy Court having reviewed the Motion, considered the evidence adduced at a hearing before the court (the "Hearing") and the oral and written arguments of the parties appearing on the Motion at the Hearing; and the Bankruptcy Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; it is HEREBY ORDERED AS FOLLOWS:

1.      Pursuant to Bankruptcy Rule 9019, the compromises and settlements described in the Motion and provided for in the Amended and Restated Settlement Term Sheet are reasonable and appropriate and are hereby approved. Engy's and Bellon's entry into the Amended and Restated Settlement Term Sheet are hereby approved and authorized and the provisions of the Amended and Restated Settlement Term Sheet shall be effective and binding in accordance with their terms.

2.      The parties to the Settlement Term Sheet are authorized and directed to perform under and comply with the Amended and Restated Settlement Term Sheet, and to enter into, perform, execute, deliver and comply with all such further documents, and take all such further actions, as may be necessary or appropriate to immediately continue and fully implement the terms and provisions of the Amended and Restated Settlement Term Sheet in accordance with

the terms, conditions, agreement, and releases set forth therein, without the need for any further approval from this Bankruptcy Court.

3.      Subject only to the provisions of the Amended and Restated Settlement Term Sheet, without further order from this Bankruptcy Court, and to the extent necessary to permit the parties to the Amended and Restated Settlement Term Sheet to implement the terms and provisions thereof, the automatic stay imposed under 11 U.S.C. §362(a) is modified.

4.      Neither Engy nor Bellon (each as defined in the Amended and Restated Settlement Term Sheet) shall be granted or receive a release of any kind unless and until all transactions contemplated by the Amended and Restated Settlement Term Sheet have been consummated except for exercise of the option. Except as otherwise provided in the Amended and Restated Settlement Term Sheet, upon full and complete consummation of the transactions contemplated thereby, the Parties (as defined therein), and each of their respective attorneys, advisors, professionals, officers, directors, members and shareholders shall be deemed to have mutually released each other from any and all claims, rights interests and causes of action from the beginning of time until the date of consummation of the transactions contemplated by the Amended and Restated Settlement Term Sheet, except for the obligations of the Parties set forth in the Amended and Restated Term Sheet and the claims of the professionals retained in the Chapter 11 Cases; provided, however, that in the event of a default under the Amended and Restated Settlement Term Sheet, Engy Group and Bellon reserve the right to prosecute chapter 11 plans and SWCP LLC reserves the right to oppose the confirmation of the plans and the granting of discharges thereunder.

5.      Upon full consummation of the transactions set forth in the Amended and Restated Settlement Term Sheet, SWCP LLC (as defined in the Amended and Restated Settlement Term Sheet) shall dismiss Adversary Proceeding No. 17-3372 with prejudice.

6.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

7.      All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

8.      The Bankruptcy Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

DATED:

_____
UNITED STATES BANKRUPTCY JUDGE

## Exhibit A

**Amended and Restated Settlement Term Sheet**

**AMENDED AND RESTATED**
**BINDING TERM SHEET FOR SETTLEMENT OF CLAIMS BY AND AGAINST**
**KURT ORBAN PARTNERS, SOUTHWEST CONTAINER PRODUCTS LLC AND**
**MATT ORBAN; FRANCOIS STANISLAS BELLON; DR. KENNETH LO; AND THE**
**ENGY GROUP LLC AND ITS SUBSIDIARIES AND AFFILIATES**

January 31, 2018

This Amended and Restated Binding Term Sheet ("Amended Term Sheet") relates to a proposed settlement of all claims asserted by or against the following persons and entities, in connection with the Engy Group Case and the Bellon Case (each as defined below):

Kurt Orban Partners ("Partners"), Matt Orban ("Orban"),  SWCP, LLC f/k/a Southwest Container Products LLC ("Southwest") and each of their respective subsidiaries, affiliates, members, managers, officers and directors (all such persons and entities, collectively with Partners,  Orban and Southwest being referred to as "SWCP LLC");

Francois Stanislas Bellon ("Bellon");

Dr. and Mrs. Kenneth Lo ("Dr. Lo");

The Engy Group LLC ("Engy Group");

Engy Southwest Container Products, Inc. ("ESWCP");

Texas Engy Drum LLC ("Drums");

Engy Belvoir Ventures LLC ("Ventures");

Engy Belvoir Healthcare LLC ("Healthcare"); and

Mowery Plant LLC ("Mowery").

The above persons and entities shall collectively be referred to as the "Parties."

Bellon's chapter 11 case is pending under Case No. 17-34923 (the "Bellon Case") and The Engy Group's chapter 11 case is pending under Case No. 17-34848 (the "Engy Group Case"), each in the U.S. Bankruptcy Court for the Southern District of Texas, Houston Division (together, the "Chapter 11 Cases").

WHEREAS, on October 27, 2017, the Bankruptcy Court in the Chapter 11 Cases entered its *Order Approving Engy Group LLC's Expedited Motion Under 11 U.S.C. §105(a) and 363, Bankruptcy Rules 6004 and 9019 and Local Rule 9013-1 for Approval of Binding Term Sheet for Settlement* (Doc. 73) (the "Settlement Order"), which approved the Binding Term Sheet attached thereto (the "Original Term Sheet"); and

WHEREAS, a default occurred under the Original Term Sheet when the payment of $3.0 million to SWCP LLC due on December 15, 2017 was not made (as described on page 4 of the Original Term Sheet); and

WHEREAS, pursuant to paragraph 6 on page 6 of the Original Term Sheet, as a result of the defaults described above, SWCP LLC was entitled to take possession of the Equity Collateral and the KOP Collateralization (each as defined in the Original Term Sheet); and

WHEREAS, the Parties have been negotiating an amended and restated settlement in lieu of an exercise of remedies under the Original Term Sheet; and

WHEREAS, Dr. Lo purchased the Green Bank Debt (as defined in the Original Term Sheet) such that Green Bank is no longer a party to the Chapter 11 Cases;

NOW THEREFORE, the Parties hereby enter into this Amended Term Sheet which substitutes in full for the Original Term Sheet.

### Settlement Terms Between Dr. Lo and Bellon

1.      Bellon transfers 100% of his interest in the Engy Group to Dr. Lo.

2.      All DIP Loans made by Mowery to Engy Group are hereby assumed by ESWCP.

3.      Drums is dissolved and all ownership in ESWCP is transferred to the Engy Group.  The minority shareholders in Drums will receive the following interests in ESWCP.

     a.  Cenk Ozdogan          -          .5%

     b.  Suresh Kumar          -          .5%

     c.  Volkan Guzel          -          .5%

     d.  Javier Gudino          -          .5%

4.      The Engy Group transfers a 13% interest in ESWCP to Bellon.

5.      Bellon executes a non-recourse, non-interest bearing promissory note to Dr. Lo containing the following terms:

     a.  Amount:          $1,050,000

     b.  Interest Rate:  zero

    c.  <u>Maturity:</u>    One year from the date this Amended Term Sheet is approved by the Bankruptcy Court.

    d.  <u>Collateral:</u>    The note is to be secured by a pledge of the 13% interest in ESWCP.

    e.  <u>Payments:</u>    No payments are due on the note until maturity.

    f.  <u>Default</u>:    If the note is not paid in full by the maturity date, Dr. Lo's sole remedy is foreclosure of the 13% interest in ESWCP.

6.    Bellon is granted an option to purchase all of the interest in ESWCP owned by Engy Group or Dr. Lo, whether preferred, common, or otherwise on the following terms and conditions:

    a.  <u>Term:</u>  One year from the date the Bankruptcy Court enters an order  approving this Amended Term Sheet.

    b.  <u>Price:</u>  The price depends on the month in which Bellon elects to exercise the option.  Attached hereto as **Exhibit A** is the price for each month from February 2018 through January 2019.

    c.  <u>ESWCP Debt:</u> Bellon must refinance or repay in full all debt of ESWCP upon which Dr. Lo is liable as shown on the attached **Exhibit A**.  The estimated balance of the ESWCP debt is shown on **Exhibit A**.  For the avoidance of doubt, ESWCP Debt excludes debt of any affiliates, such as Mowery Plant, LLC and the Engy Group.

    d.  <u>ESWCP Equity Raise:</u>    Dr. Lo agrees that any new equity issued in ESWCP will be subject to the option set forth in this paragraph.

    e.  <u>Disposition of ESWCP Before Expiration of the Option Period</u>.  Dr. Lo agrees that he will not sell ESWCP or its assets during the option term, or foreclose, unless the procedures set out below are followed.  Any such disposition including foreclosure is subject to the following terms and conditions:

        i.  Dr. Lo cannot sell ESWCP or any of its assets or foreclose for a period of ninety (90) days from the date this Amended Term Sheet is approved by the Bankruptcy Court.

        ii.  If Dr. Lo decides to sell ESWCP or any of its assets or foreclose before expiration of the option term, he will give Bellon notice of such a decision within forty-eight (48) hours after such decision is made.

      iii.  Dr. Lo shall provide Bellon with information regarding any entity interested in purchasing ESWCP or its assets.

      iv.  Upon receipt, Dr. Lo must provide Bellon with copies of any offers, expressions of interest, letters of intent, or similar communications relating to the sale of ESWCP or its assets.

      v.  Upon receipt of a formal bona fide offer to purchase ESWCP or its assets, Bellon shall have forty-five (45) days to match the offer.  If the bona fide offer is from an unrelated third party and includes a provision for non-refundable earnest money, Bellon, within ten (10) business days of receipt of the bona fide offer, must post a non-refundable earnest money deposit equal to the amount posted by the third party.

      vi.  If Dr. Lo decides to foreclose, Bellon shall have forty-five (45) days to purchase the assets at the foreclosure sale by paying off in full the Green Bank Debt purchased by Dr. Lo.

  f.  <u>Unpaid Rent due Mowery:</u>     If Bellon exercises this option, ESWCP shall remain liable for any unpaid rent due to Mowery Plant, LLC.

7.     Bellon and ESWCP shall enter into an employment agreement containing the following terms:

  a.  <u>Salary:</u>          $1,000 per month unless Dr. Lo elects the option in subparagraph (f) below.

  b.  <u>Health Insurance:</u>     ESWCP shall provide Bellon with health insurance at no cost to Bellon.

  c.  <u>Life Insurance:</u>        Subject to subparagraph (e), ESWCP shall continue to pay Bellon's life insurance premiums.

  d.  <u>Car Allowance:</u>        Subject to subparagraph (e), ESWCP shall continue to provide Bellon with a car.

  e.  <u>Cap:</u>   The Life Insurance and Car Allowance referred to in subparagraphs (c) and (d) shall be capped at $1,000 per month; provided however, that if this $1,000 per month is insufficient to cover Life Insurance, ESWCP shall still make the Life Insurance payment and Bellon will reimburse ESWCP for the difference. ESWCP may cancel the life insurance if Bellon does not reimburse SWCP for the difference within ten (10) business days of the date the premium payment is due.

      f.    <u>Salary Adjustment:</u>   Dr. Lo shall have the option to eliminate payments for the Life Insurance and the Car Allowance if he increases Bellon's salary to $2,000 per month.

      g.    <u>Office:</u>       ESWCP shall provide Bellon an office at ESWCP.

      h.    <u>Books and Records:</u>  Bellon shall have full and complete access to all books, records and financial information, financial forecasts, budgets, Board presentations, tax returns, audits, appraisals, contracts, leases, lender presentations and investor presentations of ESWCP.

8.   Bellon, for himself and the entities directly and indirectly controlled by him, disclaims any interest in: a) Mowery and b) Healthcare.

**<u>Settlement Terms Between Dr. Lo, the Engy Group, Mowery, ESWCP, Drums, Ventures, Healthcare and SWCP LLC</u>**

9.     Upon Bankruptcy Court approval of this Amended Term Sheet, Healthcare shall (A) assign and transfer to SWCP LLC or its assigns all right, title and interest in and to: (i) that certain Commercial Contract Improved Property between Healthcare and 11500 Space Center LLC, dated November 17, 2016, as amended on April 28, 2017, and as it thereafter may have been amended or modified from time to time; and (ii) 12.5% of Healthcare's ownership interest in Sacred Oak Medical Center, LLC ("<u>Sacred Oak</u>") and (B) assign and transfer to Dr. Lo or his assigns all right, title and interest in and to 7.5% of Healthcare's ownership interest in Sacred Oak. The Parties shall promptly take all such individual and corporate actions as may be required to implement the provisions of this Amended Term Sheet (including but not limited to corporate resolutions consistent with the terms hereof), and Healthcare shall promptly be dissolved after the transactions in this paragraph 9 have been consummated.

10.    No later than February 28, 2018, SWCP LLC shall be removed as a guarantor under, and released from, any and all obligations and liabilities of any and all owing to, Third Coast Bank.

11.     If SWCP LLC is not released from the Third Coast Bank obligations as set forth immediately above by February 28, 2018, Dr. Lo shall indemnify SWCP LLC with respect to any and all such obligations and liability thereunder until such time as SWCP LLC has been fully and finally released.  If SWCP LLC is not released from the Third Coast Bank obligations by February 28, 2018, Dr. Lo shall use continuing good faith efforts to obtain such release.

12.     Upon approval of this Amended Term Sheet by the Bankruptcy Court, SWCP LLC shall be deemed released from (i) the Green Bank Debt purchased by Dr. Lo, (ii) any lease guarantees that may be in existence and (iii) any  and all other obligations or liabilities of any kind owing or alleged to be owed to Engy Group, Mowery, ESWCP, Ventures, Healthcare, Dr. Lo, Bellon and each of their respective members, officers, directors, subsidiaries and affiliates, *but not including* the obligations under the Third Coast Bank debt, which are governed by paragraphs 10 and 11 hereof.  Dr. Lo, Bellon, Engy Group, Mowery, ESWCP, Ventures and Healthcare shall execute, or cause to be executed, such documents as may reasonably be requested by SWCP LLC to evidence the releases set forth in this paragraph.

## General Provisions

13.     Bellon represents and warrants that upon completion of the transactions set forth in this Amended Term Sheet the ownership of ESWCP is as follows: 13% Bellon, 10% Filemon Lopez, 2% Paul McKelvy, 2% Isidro Salazar, Cenk Ozdogan .5%, Suresh Kumar .5%, Volkan Guzel.5%, Javier Gudino 1%, 71% Engy Group or Dr. Lo.  If any other entity claims any ownership in ESWPC, such ownership shall be deducted from the interest owned by Bellon.  Dr. Lo and Bellon agree to use best efforts to enter an agreement prior to February 28, 2018, with Lopez, McKelvy, Salazar, Ozdogan, Kumar, Guzel, Gudino, Bellon, and Dr. Lo to agree that the ESWCP equity ownership described in this paragraph shall supersede all prior agreements,

whether oral or written, subject to the approval of this Amended Term Sheet by the Bankruptcy Court.

14. Dr. Lo represents and warrants that he will remain current on his existing debt to Green Bank, and that he will notify Bellon if his debt to Green Bank goes into default.

15. Except for the obligations sets forth in this Amended Term Sheet and the claims of the professionals retained in the Chapter 11 Cases, upon consummation of the transactions set forth herein (unless otherwise set forth herein), the Parties, and each of their respective attorneys, advisors, professionals, officers, directors, members, subsidiaries, affiliates and shareholders shall be deemed to have mutually released each other from any and all claims, rights, interests and causes of action from the beginning of time until the date of consummation of the transactions contemplated hereby.  Further, each Party covenants and agrees not to sue or institute litigation against any other Party for any claims, causes of action, obligations, etc. released by this Amended Term Sheet; provided, however, that each Party retains the right to seek enforcement of this Amended Term Sheet against each other Party.

16. This Amended Term Sheet is a complete substitution for the Original Term Sheet.

17. This Amended Term Sheet is subject to approval of the Bankruptcy Court.  The Parties shall use their best efforts to have this Amended Term Sheet approved at the hearing in the Chapter 11 Cases which is currently scheduled for February 8, 2018.

18. The Chapter 11 Cases shall remain open and pending until the transactions contemplated hereby have been fully consummated, except for the release of SWCP LLC from the Third Coast Bank debt.  For purposes of this paragraph and paragraph 19, the option transaction contemplated in paragraph 6 will be considered to be completed upon the date the option is granted to Bellon rather than at the end of the option period.

19.     Upon full consummation of the transactions set forth in this Amended Term Sheet, Southwest shall dismiss Adversary Proceeding No. 17-3372 with prejudice.

20.     Engy and Bellon agree, affirm and confirm that the corporate and capital structure set forth on the corporate structure chart attached as **Exhibit B** is accurate and true and correct as of the date of this Amended Term Sheet, and no other persons or entities own, hold or control any equity interests in any of the entities set forth therein.

21.     The Parties shall each execute such other and further documents evidencing the transfers and other corporate actions set forth herein, and do such other things, as may be necessary, appropriate, or reasonably requested by any other Party, to carry out the provisions and intent of this Amended Term Sheet.

22.     The Parties to this Amended Term Sheet agree that they shall not make to any other person or entity, for any reason, any oral or written statements which are disparaging, derogatory, or otherwise directly or indirectly impugns any of the Parties to this Amended Term Sheet, or any of such Parties' business or employment practices or personal matters.

23.     This Amended Term Sheet shall be binding on each Party's successors and assigns

24.     Each Party is duly authorized to enter into this Amended Term Sheet and be bound hereby, subject only to Bankruptcy Court approval for Bellon and Engy Group.

**AGREED:**

| | |
|---|---|
| **GRAY REED & McGRAW LLP**<br><br>By:_____<br>    Jason S. Brookner<br>    Texas Bar No. 24033684<br>1300 Post Oak Blvd., Suite 2000<br>Houston, Texas 77056<br>Telephone:  (713) 986-7000<br>Facsimile:  (713) 986-7100<br>Email: jbrookner@grayreed.com<br>**COUNSEL TO SWCP LLC** | **DIAMOND McCARTHY LLP**<br><br>By:_____<br>    Kyung S. Lee<br>    Texas Bar No. 12128400<br>Two Houston Center, 909 Fannin, 37th Fl.<br>Houston, Texas 77010<br>Telephone:  (713) 333-5125<br>Facsimile:  (713) 333-5159<br>Email: klee@diamondmccarthy.com<br>**COUNSEL TO THE ENGY GROUP LLC** |
| **MATT ORBAN, individually**<br><br>By:_____<br>    Matt Orban | **HOOVER SLOVACEK, LLP**<br><br>By:_____<br>    Edward L. Rothberg<br>    Texas Bar No. 17313990<br>Galleria Tower II<br>5051 Westheimer Road Suite 12000<br>Houston, Texas 77056<br>Telephone:  (713) 977-8686<br>Facsimile:  (713) 977-5395<br>Email: rothberg@hooverslovacek.com |
| **KURT ORBAN PARTNERS LLC**<br><br>By:_____<br>    Matt Orban | |
| **SWCP, LLC (f/k/a Southwest Container Products LLC)**<br><br>By:_____<br>Matt Orban | **COUNSEL TO FRANCOIS STANISLAS BELLON**<br><br>**FRANCOIS STANISLAS BELLON**<br><br><br>By:_____<br>    Francois Stanislas Bellon |

| | |
|---|---|
| **CHRISTIAN SMITH & JEWELL, LLP** | **ENGY SOUTHWEST CONTAINER PRODUCTS, INC.** |
| By:_____ | A Texas Corporation |
|     James "Wes" Christian | |
|     Texas Bar No. 04228700 | By: **Filemon Lopez, CEO and Director** |
| 2302 Fannin, Suite 500 | |
| Houston, Texas 77002 | |
| Telephone:  (713) 659-7617 | _____ |
| Facsimile:  (713) 659-7641 | |
| Email: jchristian@csj-law.com | DATE:  _____ |
| | |
| **COUNSEL TO DR. AND MRS. LO** | By: **Francois Stanislas Bellon, COO and Director** |
| | |
| **DR. KENNETH LO** | |
| | _____ |
| By:_____ | |
|     Kenneth Lo | DATE:  _____ |
| | |
| **MRS. LILLIAN LO** | **TEXAS ENGY DRUMS, LLC** |
| | A Texas Limited Liability Company |
| By:_____ | |
|     Lillian Lo | By: **The Engy Group, LLC, managing member** |
| |     By: **Francois-Stanislas Bellon, managing member** |
| | |
| | _____ |
| | |
| | DATE:  _____ |

**ENGY BELVOIR HEALTHCARE, LLC,**
A Texas Limited Liability Company

By: **Engy Belvoir Ventures, LLC, voting member**

By: **The Engy Group, LLC, sole member**

    By: **Francois-Stanislas Bellon, managing member**

_____

DATE: _____

By: **Dr. Kenneth Lo, voting member**

_____

DATE: _____

**ENGY BELVOIR VENTURES, LLC**
A Texas Limited Liability Company

By: **The Engy Group, LLC, sole member**

    By: **Francois-Stanislas Bellon, managing member**

_____

DATE: _____

**MOWERY PLANT, LLC**
A Texas Limited Liability Company

By: **Engy Belvoir Ventures, LLC, member**

    By: **The Engy Group, LLC, sole member**

        By: **Francois-Stanislas Bellon, managing member**

_____

DATE: _____

By: **Dr. Kenneth Lo, manager and member**

_____

DATE: _____

|  | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan 19 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Buyout Price ($000's)** | | | | | | | | | | | | | |
| Lo Contributions Current Balance | 5,750 | 5,750 | 6,410 | 6,759 | 7,579 | 8,268 | 8,570 | 9,233 | 9,648 | 10,032 | 10,504 | 10,917 | 11,343 |
| New Contributions - Phase 2 | | 454 | 126 | 91 | 437 | 33 | 57 | 45 | - | - | - | - | - |
| New Contributions - Working Capital | | 63 | 63 | 560 | 63 | 63 | 392 | 63 | 63 | 138 | 63 | 63 | 63 |
| Ending Lo Balance bf Return | 5,750 | 6,266 | 6,599 | 7,410 | 8,079 | 8,364 | 9,019 | 9,340 | 9,710 | 10,170 | 10,566 | 10,979 | 11,405 |
| 30% Monthly Guaranteed Return | | 144 | 160 | 169 | 189 | 207 | 214 | 308 | 322 | 334 | 350 | 364 | 378 |
| 40% **Lo Balance after Return** | **5,750** | **6,410** | **6,759** | **7,579** | **8,268** | **8,570** | **9,233** | **9,648** | **10,032** | **10,504** | **10,917** | **11,343** | **11,784** |
| SWCP Debt | | 9,914 | 10,040 | 10,131 | 10,569 | 10,601 | 10,658 | 10,703 | 10,703 | 10,526 | 10,349 | 10,172 | 9,993 |
| **Buyout Price before Return** | | **16,324** | **16,799** | **17,710** | **18,837** | **19,172** | **19,891** | **20,351** | **20,735** | **21,030** | **21,266** | **21,515** | **21,776** |

Exhibit A



Exhibit B