# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| THE ENGY GROUP, LLC, | § | Case No. 17-34848 |
| | § | |
| Debtor. | § | (Chapter 11) |
| | § | |

| | | |
|---|---|---|
| | § | |
| In re: | § | |
| | § | |
| FRANCOIS STANISLAS BELLON, | § | Case No. 17-34923 |
| | § | |
| Debtor. | § | (Chapter 11) |

## DEBTOR FRANCOIS STANISLAS BELLON'S COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT

**DEBTOR FRANCIOS STANISLAS BELLON'S COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT HAS BEEN SET FOR A FINAL HEARING ON CONDITIONAL APPROVAL OF THE DISCLOSURE STATEMENT ON JUNE 27, 2018, AT 10:30 A.M. IN COURTROOM 404, UNITED STATES COURTHOUSE, 515 RUSK STREET, HOUSTON, TEXAS, 77002.**

On August 17, 2017, (the "Petition Date"), Francois Stanislas Bellon ("Debtor" or "Bellon") filed his voluntary petition under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division ("Bankruptcy Court" or "Court").

If you are a Creditor you should read this Combined Disclosure Statement and Plan of Reorganization carefully. The Debtor urges all holders of Claims in Impaired Classes receiving Ballots to accept the Plan of Reorganization proposed by the Debtor as contained herein**.**

This Combined Disclosure Statement and Plan of Reorganization (the "DS/Plan"), any amendments, supplements, and exhibits thereto, the accompanying Ballot form, if any, and the related materials delivered together herewith are being furnished by the Debtor to holders of Impaired Claims and Impaired Interests pursuant to § 1125[1], in connection with the solicitation by the Debtor of votes to accept or reject the Plan and the transactions as described herein.

This DS/Plan is designed to provide adequate information to enable holders of Claims against and Interests in the Debtor to make an informed decision whether to vote in favor of or against the Plan of Reorganization that the Debtor is proposing. All Creditors are encouraged to

---

[1] All references to "§" reference the applicable section of the Bankruptcy Code.

read this DS/Plan in its entirety before voting to accept or reject the Plan proposed by the Debtor. The projected financial information contained herein has not been the subject of an audit, unless otherwise stated.

All holders of Impaired Claims should read and consider carefully the matters described in the DS/Plan as a whole prior to voting on the Plan proposed by the Debtor. In making a decision to accept or reject the Plan, each Creditor must rely on its own examination of the Debtor as described in this DS/Plan, including the merits and risks involved. You are encouraged to seek the advice of qualified legal counsel with respect to the legal effect of any aspect of the DS/Plan. In addition, Confirmation and Consummation of the Plan are subject to conditions precedent that could lead to delays in Consummation of the Plan proposed by Debtor. There can be no assurance that each of these conditions precedent will be satisfied or waived or that the Plan proposed by the Debtor will be consummated. Even after the Effective Date, distributions under the Plan proposed by the Debtor may be subject to delay so that disputed claims can be resolved.

No party is authorized by the Debtor to give any information or make any representations with respect to the DS/Plan other than that which is contained herein. No representation or information concerning the Debtor, its business or the value of its properties has been authorized by the Debtor, other than as set forth herein. Any information or representation given to obtain your acceptance or rejection of the Plan that is different from or inconsistent with the information or representations contained herein should not be relied upon by any holders of Claims or Interests in voting on the Plan proposed by the Debtor.

This DS/Plan has been prepared in accordance with § 1125 and not in accordance with federal or state securities laws or other applicable non-bankruptcy law. Entities holding or trading in or otherwise purchasing, selling or transferring Claims against, Interests in or securities of, the Debtor should evaluate this DS/Plan only in light of the purpose for which it was prepared.

With respect to contested matters, adversary proceedings and other pending or threatened actions (whether or not pending), this DS/Plan and the information contained herein shall not be construed as an admission or stipulation by any Entity, but rather as statements made in settlement negotiations governed by Rule 408 of the Federal Rules of Evidence and any other rule or statute of similar import. This DS/Plan shall not be construed to be providing any legal, business, financial or tax advice. Each holder of a Claim or Interest should, therefore, consult with its own legal, business, financial and tax advisors as to any such matters concerning the solicitation, the Plan or the transactions contemplated thereby.

This DS/Plan shall not be construed to be providing any legal, business, financial or tax advice. Each holder of a Claim or Interest should, therefore, consult with its own legal, business, financial and tax advisors as to any such matters concerning the solicitation, the Plan or the transactions contemplated thereby.

## INCORPORATION OF DOCUMENTS BY REFERENCE

This DS/Plan incorporates by reference certain documents relating to the Debtor that are not presented herein or delivered herewith. The following documents have been filed in the Debtor's bankruptcy case and are incorporated by reference herein in their entirety, including all amendments thereto filed prior to the date set for confirmation: (a) the Debtor's Schedules, Schedules, filed on September 22, 2017 [ECF Document 27]; Corrected Supplement to Debtor's Schedule B Personal Property filed on January 26, 2018 [ECF Document 44], Statement of Financial Affairs ("SOFA") filed on September 22, 2017 [ECF Document 28], Amended SOFA filed on January 26, 2018 [ECF Document 43], and Amended Schedule E/F filed on May 11, 2018 in the Engy case (ECF Document 149]. Documents and pleadings filed in this case are available at the following website: http://www.txsb.uscourts.gov/.

## I.    INTRODUCTION AND SUMMARY

The following introduction and summary is qualified in its entirety by, and should be read in conjunction with, the more detailed information appearing elsewhere in this DS/Plan.

## A.    Plan Summary

This Plan applies only to the direct creditors of Bellon. A separate plan has been filed for the payment of creditors of The Engy Group, LLC ("Engy"). Bellon's plan is simple. He intends to pay all of his creditors in full without interest on the Effective Date of the Plan. The source of funds will be a bank account held in the name of his brother. Sufficient funds to make the plan payments shall be deposited into the IOLTA trust account of Bellon's counsel on or before the date of the Confirmation Hearing. As discussed more fully below, pursuant to the Amended and Restated Term Sheet ("Amended Term Sheet"), Bellon was granted an option to purchase 71% of the drum business from Engy or Dr. Lo, whoever is the owner. A dispute arose between Dr. Lo and Bellon over exercise of the option. Dr. Kenneth Lo filed an Emergency Motion under 11 U.S.C. §105(a) for Clarification of the Court's February 8, 2018 Order Approving the Amended and Restated Binding Term Sheet (Doc. 165). On June 19, 2018, the parties participated in a court order mediation which resulted in execution of a document entitled Mediated Settlement Terms: June 19, 2018. A copy of this document is attached hereto as **Exhibit "A"** and incorporated by reference into the Plan. The DS/Plan seeks approval of the settlement embodied in this document pursuant to 11 U.S.C. §1123(b)(3).

## B.    The Solicitation.

On June 20, 2018, the Debtor filed this DS/Plan. This DS/Plan is submitted by the Debtor to be used in connection with the solicitation of votes on Debtor's Plan.

Debtor has requested that the Bankruptcy Court hold a hearing on approval of this DS/Plan to determine whether this DS/Plan contains "adequate information" in accordance with § 1125. Pursuant to § 1125(a)(1), "adequate information" is defined as "information of a kind, and in sufficient detail, as far as reasonably practicable in light of the nature and history of the Debtor and the condition of the Debtor's books and records, … that would enable a hypothetical

reasonable investor typical of holders of claims or interests of the relevant Class to make an informed judgment about the Plan proposed by the Debtor.  A hearing to consider conditional approval of the Disclosure Statement has been set for the 27th day of June 2018, at 10:30 a.m. in Courtroom 404, United States Courthouse, 515 Rusk Street, Houston, Texas.  A hearing on confirmation of the Plan has been set for the ____ day of _____ 2018, at ___.m., in Courtroom 404, United States Courthouse, 515 Rusk Street, Houston, Texas, at which time the Court will hold a hearing on final approval of the disclosure information provided and on confirmation of the Plan proposed by the Debtor (the "Confirmation Hearing"). Objections to the final approval of the Disclosure Statement or objections to Confirmation of the Plan must be in writing and must be filed with the Clerk of the Bankruptcy Court and served on the counsel listed below to ensure receipt by them on or before 5:00 p.m., on _____, 2018. Bankruptcy Rule 3007 governs the form of any such objection.

## C.    Debtor's History, Litigation, Settlements and Major Events.

Bellon is an individual who resides in Houston, Texas. Bellon is an entrepreneur who has previously led multiple start-up efforts in various industries.  In 2015, Bellon became the sole member of Engy, the other Debtor in these Jointly Administered cases.  Engy is a Delaware limited liability company formed in January 2013. A corporate organizational chart of Engy and its affiliates and subsidiaries is attached hereto as **Exhibit "B"**. Engy was established to be a diversified holding company with investments in real estate, health care and the steel drum production and sale businesses.  In 2015, Bellon became the sole member of  Engy. Engy's corporate office is located at 2425 Mowery Road, Houston, Texas 77045.  Engy is a holding company and is the (i) 100% owner of Engy Belvoir Ventures, LLC ("Engy Belvoir") and (ii) 94% owner of Texas Engy Drums ("Engy Drums").

The corporate affairs of Engy are governed by the Amended and Restated Company Agreement of The Engy Group, LLC, dated as of November 30, 2016, but effective initially as of April 14, 2015 (the "Engy Company Agreement"). Under the Engy Company Agreement, Bellon was appointed manager of Engy.  Subsequently, Bellon transferred membership interests in Engy, as follows: (a) ten percent (10%) membership interest to Filemon "Phil" Lopez, (the president of Engy Containers), (b) five percent (5%) membership interest to Dr. Lo, and (c) two (2%) percent membership interest to Isidro Salazar Garza. As a result of these transfers, Bellon held an eighty-three percent (83%) membership interest in Engy as of the Petition Date.

As a start-up venture, Engy relied on investments from affluent domestic and international investors, working capital provided by Bellon, secured loans from lenders like Green Bank, N.A. ("Green Bank") and Third Coast Bank, N.A. ("Third Coast"), and trade and financing credit from Kurt Orban Partners ("KOP"), William Walker and others.  On or about April 19, 2017, Engy entered into a Secured Promissory Note in the principal amount of $3,700,000 payable to KOP.  As discussed below, KOP made credit available to the underlying investments.

*The Drum Business*

As of the Petition Date, Engy Drums owns 100% of the issued and outstanding shares of ("Engy Containers").  Engy Containers' mission has been to become the leading full service industrial packaging provider in the United States. The management team, partners, board of directors, and advisors leading this initiative are comprised of experienced professionals in the drum supplier industry and material supply experts. The company is working on the team's efficiency to shorten the development schedule, reduce start-up costs, and increase profitability. Engy Containers has established a Full Life Cycle Program approach for the industrial container industry. For its customers, Engy Containers seeks to be a full-service provider for all packaging needs.  Engy Containers intends to provide the North American region with sustainable industrial container solutions, container services, and container management systems for a diverse set – small, medium, large – of customers. National coverage for all customer needs include new steel drums, reconditioned steel drums, transportation services for reclaimed drums, recycled steel program with direct selling of scrap to steel mills, and toll filling, blending and storage.

The drum business was financed in part by several loans from KOP and Green Bank. KOP and Engy Containers entered into a Secured Promissory Note in the principal amount of $4,000,000. KOP also made trade credit available to Engy Containers to purchase steel.  Green Bank entered into a Credit Agreement, dated as of February 27, 2017 (the "Credit Agreement"), with Engy Containers, Engy Drums, Bellon, and Matthew Orban (collectively, the "Borrowers"). Pursuant to the Credit Agreement, Borrowers executed a Term Loan Note with a commitment of $8,000,000 and a Revolving Loan Note with a commitment of up to $5,000,000, subject to a borrowing base (collectively, the Term Loan Note and the Revolving Loan Note form the "Green Bank Debt"). Although Engy is not obligated for the Green Bank Debt, Engy's steel drum subsidiaries, Engy Drums and Engy Containers, are primary obligors for the Green Bank Debt and all of their assets secure the repayment of the Green Bank Debt. KOP agreed to subordinate to the Green Bank Debt amounts, if any, owed to them by Engy Containers and Engy Drums.  As of the Petition Date, the Borrowers owed Green Bank $2,395,000 on the Revolving Loan Note and $7,278,545.53 on the Term Loan Note. The Green Bank Debt was also secured by a cash reserve in the amount of $1,251,559.02 held at Green Bank (the "Cash Reserve"). On September 28, 2017, the Court entered an Agreed Order Lifting Stay that allowed Green Bank to offset the Cash Reserve against the Revolving Loan Note (the "Stay Order").

*The Healthcare Business*

As of the Petition Date, Engy Belvoir owned 50% of the interests in Engy Belvoir Healthcare LLC ("Healthcare LLC") and Dr. Lo owned the remaining 50%. Healthcare LLC, in turn, owns an option to purchase a 100% member interest in 11500 Space Center, LLC ("Space Center") for $22.0 million. Healthcare LLC provided Space Center with a $6.0 million down payment on its purchase option, which entitles Healthcare LLC to 100% of the real estate and 20% of the operating company known as Sacred Oak Medical Center, LLC (the "Sacred Oak"). Therefore, as of the Petition Date, Healthcare LLC would have needed to invest an additional $16.0 million to exercise the purchase option. Prior to exercise, Space Center has been paying monthly cash interest at a 7.5% annual rate on the $6.0 million down payment.  Sacred Oak operates the facility, which is located at 11500 Space Center Boulevard in Houston, Texas and is

the tenant. Sacred Oak provides medical services to adults with mental health issues, substance abuse rehabilitation services, partial hospitalization, and intensive outpatient programs (see www.sacredoakmedical.com). The Center opened in July 2017. With 80 beds, the Center offers inpatient treatment programs for adults with complex psychiatric problems, including individual and group therapy, medication management, family therapy and discharge planning. The Center's inpatient chemical dependency program offers round-the-clock supervision and a dedicated team of professionals to help adults overcome chemical dependency to addictive substances, including guarding against the dangers of withdrawal. The Center's intensive outpatient program provides time limited, multidisciplinary, multimodal structured treatment which is less intensive than a partial hospital program but more intensive than outpatient psychotherapy. The Center's partial hospitalization program provides services to patients transitioning from inpatient to outpatient treatment or who require a structured treatment plan and environment. On or about April 19, 2017, Engy Belvoir executed a secured promissory note in the amount of $3,000,000 in favor of KOP.

### *The Mowery Plant*

Engy Belvoir also owns 100% of the Class B interests in Mowery Plant LLC ("Mowery Plant"). Dr. Lo owns all the Class A preferred shares in Mowery Plant. Class A shares in Mowery Plant have preferential rights over all other common units in and to Mowery Plant. Dr. Lo is owed all the accrued but unpaid dividends from his ownership of the Class A shares. Mowery Plant borrowed $6.2 million from Third Coast Bank, N.A. ("Third Coast") to fund the purchase of the real property located at 2425 Mowery Road, Houston, Texas 77045. The current balance owed to Third Coast is approximately $5.8 million. Engy Containers leases its facility from Mowery Plant. Without this lease, Engy Containers would not be in business or would, unfeasibly, have to locate an alternate facility to manufacture steel drums.

### *Events Leading to the Bankruptcy Filings*

The KOP Notes matured on July 29, 2017 and the borrower defaulted. KOP believed the amount owed exceeded the $10.7 million aggregate face value. Bellon, Engy, Dr. Lo and others disputed the amounts owed. The KOP Notes were secured by a pledge of Bellon's membership interests in Engy. KOP began collection efforts, including voting the membership interests under the Pledge Agreements and scheduling a private sale auction of Bellon's membership interests in Engy. Bellon disputed that KOP had any rights to vote the membership interests. Bellon caused Engy to file for Chapter 11 on August 8, 2017, to prevent KOP from taking over management of the underlying investments through Engy. Bellon filed his own Chapter 11 petition on August 17, 2017, to prevent KOP from conducting a private sale of his membership interests in Engy.

### *Litigation and Settlements Reached After the Bankruptcy Filings*

After the bankruptcy filings, KOP filed an adversary proceeding to determine that it was in control over Engy by virtue of the pledge agreement. KOP also filed a motion to appoint a trustee. Engy and Bellon intended to challenge these pleadings on multiple grounds including the amount of the KOP Notes as well as the validity, scope and extent of the security interests

owing under the KOP Notes.  During this time period, Green Bank threatened to foreclose its security on the assets of Engy Containers which is a valuable asset of Engy.

Rather than litigating these disputes, the parties attended a mediation.  Although the mediation itself did not result in a settlement, the parties ultimately reached a settlement which was embodied in a document entitled the Binding Term Sheet for Settlement ("Binding Term Sheet").  A joint motion to approve the Binding Term Sheet was filed by Engy and Bellon on October 11, 2017.  The Bankruptcy Court approved the Binding Term Sheet in an order dated October 27, 2017 (Doc. 73).  The Binding Term Sheet resolved all issues among the parties and required certain milestone payments and other actions to occur in December 2017.  The Binding Term Sheet contemplated that the Chapter 11 cases would be dismissed with all creditors who were not part of the Binding Term Sheet being paid in full.  Unfortunately, for a myriad of reasons, the Debtors defaulted on the December 2017 milestones.  These milestones included a payment to KOP and either paying off or collateralizing the Green Bank debt with marketable securities.  Since this did not happen, Dr. Lo purchased the Green Bank debt in order to prevent foreclosure on Engy Containers.  Then, rather than KOP enforcing its remedies under the Binding Term Sheet, the parties once again returned to the negotiating table and entered into the Amended Term Sheet for Settlement (the "Amended Term Sheet"). The Amended Term Sheet was contemplated to be a complete substitution and replacement for the original Binding Term Sheet  A motion to approve the Amended Term Sheet was filed on February 1, 2018 (Doc. 108). The Bankruptcy Court approved the Amended Term Sheet on February 8, 2018 (Doc. 118).  A copy of the Amended Term Sheet is attached as **Exhibit "C"**.

The key terms of the Amended Term Sheet are fairly simple.  Bellon transferred 100% of his ownership interest in Engy to Dr. Lo.  Engy Drum was dissolved.  This gave Dr. Lo control of Engy Containers and the Mowery Plant as well as a minority interest in the healthcare business.  Then KOP was assigned the option to purchase the Space Center real estate and 10% of the Sacred Oak operating company with Dr. Lo to retain 10% of the Sacred Oak operating company. Dr. Lo then transferred 2.5% of the Sacred Oak operating company to a third party. Bellon gave Dr. Lo a non-recourse promissory note in the amount of $1,050,000 due in one year in exchange for a 13% interest in Engy Containers. If he did not pay at the end of one year, Dr. Lo's sole remedy was foreclosure on the 13% interest in Engy Containers. Bellon also received a coincident one-year option to purchase 71% of Engy Containers at escalating prices each month which afforded Dr. Lo a 30% return on his investment for the first six months and 40% for the second six months.  *See* Exhibit 1 attached to Exhibit C.

Once again, the Amended Term Sheet contemplated that all creditors who were not parties thereto would be paid in full and the Chapter 11 cases dismissed.  On March 20, 2018, the Debtors filed their joint motion to dismiss both Chapter 11 cases and noticed a hearing thereon for April 10, 2018.  But Dr. Lo refused to pay or provide for payment or settlement of the Engy creditors.  The parties requested that a continuance of the hearing on the motion to dismiss these cases to May 1, 2018 to provide more time for negotiation with the creditors.  By the end of April no agreement with the creditors was reached.

In an attempt to resolve this situation, on April 30, 2018, Bellon sent to Dr. Lo an addendum to the Amended Term Sheet offering to exercise the option and agreeing to pay the

creditors Dr. Lo refused to pay by deducting certain amounts from the option price.  Dr. Lo rejected this offer and countered by seeking to increase the option price by approximately $3.5 million.  Needless to say, Bellon rejected Dr. Lo's counter.

The court conducted a hearing on the motion to dismiss on May 1, 2018.  After learning that the creditors' claims were not resolved, the Bankruptcy Court denied the joint motion to dismiss and entered a Case Management Order (Doc. 139) setting a hearing for June 27, 2018 to show cause why these cases should not be converted to Chapter 7, setting hearings on claim objections, requiring the parties to mediate, and requiring the parties to file combined disclosure statements and Chapter 11 plans.

Pursuant to the Case Management Order, Engy, Bellon and Dr. Lo participated in mediation on May 30, 2018 and June 19, 2018.  Former Judge Susan Soussan was the mediator.  At the conclusion of the mediation the parties executed Mediated Settlement Terms which resolved all of the outstanding issues.  This document is attached hereto as Exhibit A and incorporated into the terms of this Plan by reference.  The key terms relative to the creditors are that through its plan Engy and Dr. Lo will pay in full all three creditors of Engy being Amex, Gao and Killough.  Dr. Lo has already reached agreements with these three creditors and their treatment is provided for in the Engy Plan.  As provided for herein, Bellon will pay in full the Allowed Amount of the claim filed by William Walker which is against both Engy and Bellon.  Bellon's plan also provides for payment in full of his personal creditors that are not related to Engy.  The other key agreements reached are as follows:

- Bellon's option to purchase Engy Containers in shortened from January 31, 2019 to October 31, 2018.
- If Bellon exercises the option and closes and funds, liability under the $1,050,000 promissory note to Dr. Lo is waived.
- If Bellon does not exercise the option, close and fund by October 31, 2018, then he will automatically deliver to Dr. Lo his 13% interest in Engy Containers and Dr. Lo will deliver to Bellon the $1,050,000 promissory note marked paid in full.
- If Bellon exercises the option, the total amount of past due rent due on the Mowery Plant which must be paid at closing is reduced from $700,000 to $166,000.
- If Bellon exercises the option, liability of Engy Containers for the $350,000 DIP Loan is waived.
- Bellon must support the Engy Plan.
- Dr. Lo and Engy must support Bellon's Plan.
- Dr. Lo and Bellon confirm that under the terms of the Amended Term Sheet they have released each other from all claims and causes of action including but not limited to liability under the Green Bank debt purchase by Dr. Lo, and the debt to Dr. Lo shown on Bellon's schedules in the amount of $975,000.

The reader is referred to Exhibit A for all of the terms.

**D.     Assets and Liabilities as of the Petition Date**

1.     Assets of Bellon as of the Petition Date:

| Asset | Notes | Value |
|---|---|---|
| Real Property | Commercial real estate and improvements located in Mazunte, Oax, Mexico known as the Las Almas Petit Hotel | $1,000,000 |
| Cash on Hand and in Bank Accounts | | $58,706.24 |
| Personal Property | Appraised by Webster at the high end | $8,365.00 |
| 83% Interest in Engy Group | | Unknown |
| Tax Refund | | $160.00 |
| Note Receivable | Abraham Thomas | $100,000.00 |
| Whole Life Policy | | $2,000.00 |
| Claim against Kurt Orban Partners | | Unknown |
| NOL Carryforward $550,000 | | Unknown |
| Total | | $1,069,231.24 |

2.     Summary of Creditors and Debt as of Petition Date

| Creditor | Schedule Amt. | Proof of Claim | Type | Status |
|---|---|---|---|---|
| Kurt Orban Partners, Ltd | Unknown | $10,500,000 | Secured | Released per the Amended Term Sheet |
| Child Support Bureau of Texas | $2,300 | None | Priority | Paid |
| Green Bank | $9,900,000 | None[2] | Unsecured/Guaranty | Released per the Amended Term Sheet |
| JP Morgan Chase | $600 | None | Unsecured | Open |
| Kenneth Lo | $975,000 | None | Unsecured/Guaranty | Released per the Amended Term Sheet |
| Liang Gao | $225,000 | None | Unsecured/Guaranty[3] | Open |

---

[2] Green Bank filed a claim in the Engy case in the amount of $9,816,170.50.  Dr. Lo purchased this debt from Green Bank and then Dr. Lo released Bellon from all liability thereon pursuant to the Amended Term Sheet.

| Memorial Herman | $4,000 | None | Unsecured | Open |
| Strother Law Firm | $12,054 | None | Unsecured | Open |
| Target National Bank | $7,171.65 | None | Unsecured | Disputed |
| Third Coast Bank | $6,100,000 | $5,866,271.29 | Unsecured/Guaranty[4] | Open |
| William Walker | $450,000 | $899,715 | Unsecured/Guaranty | Objection[5] Pending |
| Wolfcreek Development | $306,084.43 | None | Unsecured | Contingent |
| Internal Revenue Service | None | $2500 | Priority | See footnote.[6] |

3.      Analysis of Claims.

As indicated above the claims of Kurt Orban Partners, Green Bank and Dr. Lo were released pursuant to the Amended Term Sheet.

As indicated above the unsecured Claims of Liang Gao, and Third Coast Bank, are primarily in the nature of guaranties of debt owed by Engy and Mowery Plant, LLC.  Bellon anticipates that the Engy and Mowery Plant, LLC will provide for payment of these claims, and Bellon's guaranty will remain in place, unless these creditors voluntarily agree to release their guaranties.

As indicated above, the unsecured Claims of JP Morgan Chase, Memorial Herman and the Strother Law Firm are undisputed general unsecured claims in the amount $16,654 which remain due and owing.

The remaining three unsecured Claims are held by William Walker in the filed amount of $899,715, the Claim of Wolfcreek Development in the amount of $306,084.43, and the Claim of Target National Bank in the amount of $7,171.65. The Debtor has objected to the William Walker Claim and a hearing thereon is scheduled for June 27, 2018. Bellon and Walker have agreed to a continuance of this hearing to attempt to negotiate a settlement. The Wolfcreek Claim is based on an Agreed Judgment, which was just recently discovered.  There is another party liable on this debt who may have made payments and Bellon believes he has already paid $100,000 of this claim.   The schedules were amended to include this Claim and list it as contingent.   The amended schedule F was served on counsel for Wolfcreek Development. To

---

[3] This is a claim against Engy.  Pursuant to Exhibit A, Engy has settled this claim and agreed to pay it in full.
[4] The primary obligor on this claim is Mowery Plant, LLC and the debt is current.
[5] Bellon asserts that a portion of this debt is owed by Engy.  But pursuant to Exhibit A, Bellon has agreed to pay the allowed amount of this claim in full.
[6] This claim is for unfiled returns.  Debtor asserts that no returns were due and will attempt to have the IRS withdraw the claim.

date, Wolfcreek Development has not filed a Claim. Bellon has agreed to allow Wolfcreek Development 21 days from June 20, 2018 to file a claim. If no agreement can be reached with respect to this Claim, Bellon intends to file a motion to estimate it for purposes of voting and distribution. The Target National Bank Claim is based on a default judgment that was just recently discovered. The schedules were amended to include this Claim and list it as disputed as the Debtor believes it is a result of identity theft. The amended schedule F was served on Target National Bank. To date, Target National Bank has not filed a Claim. If Target National Bank does not file a Claim by a bar date set by the Court, it shall be deemed disallowed.

### E.        Post-Petition Financial Results of Operation

Bellon's Financial Reports for August 2017 through December 2017 can be found on the docket of Case No. 17-34923 at Docket Numbers 37 through 41. Bellon's Financial Reports for January 2018 through April 2018 can be found on the docket of Case No. 17-34848 at Docket Numbers 145 through 148. These financial results are immaterial to this case.

## II.      DEFINITIONS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

### A.        Definitions

For purposes of this Disclosure Statement and Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article. Any term used in this Disclosure Statement and Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

- "Administrative Claim" or "Administrative Priority Claim" means a Claim that is entitled to priority under §§ 326, 327, 330, 503(b)(1) - (9), 506(c) or 1103 asserted in this case, which Claims are described and treated in Article IV of this DS/Plan.

- "Administrative Claim Bar Date" means the date set by the Court by which Administrative Claims entitled to priority under §§ 326, 327, 330, 503(b), 506(c) or 1103 asserted in this case, including substantial contribution Claims, must be filed. Debtor will request that the Court set the Administrative Claim Bar Date by separate order of the Court.

- "Allowed Claim" means a Claim or any portion thereof (i) that has been allowed by a Final Order, (ii) that either has been Scheduled as a liquidated, non-contingent, undisputed Claim in an amount greater than zero in the Debtor's Schedules, as the same may from time to time be amended in accordance with the Bankruptcy Code, Bankruptcy Rules or order of the Bankruptcy Court, or is the subject of a timely filed proof of Claim as to which either no objection to its allowance has been filed (either by way of objection or amendment to the Schedules) within the periods of limitation fixed by the Bankruptcy

Code or by any order of the Bankruptcy Court, or any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order, or (iii) that is expressly allowed in a liquidated amount in the Plan; provided, however that with respect to an Administrative Claim, "Allowed Claim" means an Administrative Claim as to which a timely request for payment has been made in accordance with this Plan (if such written request is required) or other Administrative Claim, in each case as to which (i) a timely objection has not been filed, or (ii) a timely objection is filed and such objection has been settled, waived through payment, or withdrawn, or has been denied by a Final Order.

- "Amended Term Sheet" shall mean that Amended and Restated Term sheet approved by the Court pursuant to an order dated February 8, 2017 and attached hereto as Exhibit C.

- "Bankruptcy Estate" shall mean the estate created under § 541 upon the filing of the Bankruptcy Case.

- "Bankruptcy Rules" mean, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case or proceedings therein, as the case may be.

- "Claim" means a claim against any of the Debtor's Bankruptcy Estate, whether or not asserted, as defined in § 101(5).

- "Class" means a category of holders of Claims or Interests, as described in Article IV below.

- "Confirmation" means entry by the Bankruptcy Court of the Confirmation Order confirming this Plan.

- "Confirmation Date" means the date of entry by the Bankruptcy Court of the Confirmation Order.

- "Confirmation Hearing" means the date set by the Court for a hearing to confirm Debtor's Plan, which has been set for the _____ day of _____, 2018, at ___:____ ____.m. in Courtroom 404, United States Courthouse, 515 Rusk Street, Houston, Texas.

- "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan.

- "DIP" means the Debtor-in-Possession that continues in possession of its property and is operating its business as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107, 1108.

- "DS/Plan" shall mean this Combined Disclosure Statement and Plan of Reorganization dated as of June 20, 2018.

- "Effective Date" means thirty days after the Chapter 11 case is closed.

- "Engy" shall mean the Engy Group, LLC, the Debtor in Case No. 17-34848.

- "Final Order" means an order or judgment of the Bankruptcy Court, as entered on the docket in the Debtor's Bankruptcy Case, the operation or effect of which has not been

stayed, reversed, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired.

- "Impaired" means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of § 1124.

- "Mediated Settlement Terms" shall mean the Mediated Settlement Terms – June 19, 2018 document attached hereto as Exhibit A.

- "Person" means an individual, corporation, partnership, governmental unit, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, or other entity.

- "Plan" means Articles II through XVI of this DS/Plan.

- "Plan Documents" means any documents referenced in the Plan that are intended to be executed pursuant to the Confirmed Plan.

- "Priority Claim" means a Claim asserted under § 507(a)(3-10) against the Debtor's Bankruptcy Estate.

- "Reorganized Debtor" shall mean the Debtor after the entry of the Confirmation Order.

- "Substantial Consummation" shall have the meaning given to that term in § 1101(2). Substantial Consummation shall occur on the Effective Date.

- "Unimpaired Claim" means a Claim that is not an Impaired Claim.

- "Unsecured Claim" shall mean a Claim that is not a Secured Claim and that is not entitled to priority under § 507(a)(1-9), and includes the deficiency portions of any Secured Claim.

- "Voting Deadline" means _____, 2018 at 5:00 p.m., the deadline by which Ballots to accept or reject the Plan must be received by Debtor's counsel by in order to be counted.

## B.    Rules of Interpretation

For purposes of this Combined Disclosure Statement and Plan, (a) any reference in this Combined Disclosure Statement and Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (b) any reference in this Combined Disclosure Statement and Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented; (c) unless otherwise specified, all references in this Combined Disclosure Statement and Plan to Sections, Articles, Schedules, and Exhibits are references to Sections, Articles, Schedules, and Exhibits of or to this Combined Disclosure Statement and Plan; (d) the words "herein" and "hereto" refer to this Combined Disclosure Statement and Plan in its entirety rather than to a particular portion of this Combined Disclosure Statement and Plan; (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation

of this Combined Disclosure Statement and Plan; and (f) the rules of construction set forth in § 102 and in the Bankruptcy Rules shall apply.

## C.    Computation of Time

All times referenced in this Disclosure Statement and Plan are prevailing Central Time. In computing any period of time prescribed or allowed by this Combined Disclosure Statement and Plan, the provisions of Fed. R. Bankr. P. 9006(a) shall apply.

## III.    BAR DATES AND TREATMENT FOR ADMINISTRATIVE CLAIMS

With respect to all requests for payment of professional fees pursuant to §§ 327, 328, 330, 331, 503(b), 506(c) or 1103 for services rendered and expenses incurred prior to the Effective Date, such professionals shall file and serve an application for final allowance of compensation and reimbursement of expenses no later than 60 days after the entry of the Confirmation Order.

## IV.    CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

All Claims and Interests are placed in the Classes set forth below. A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled.

## A.    Class 1 – Administrative Claims – Professional Fee Claims and U.S. Trustee Quarterly Fees.

**Description.** All Claims entitled to administrative priority under §§ 330(a)(1), 503(b)(2) incurred during the Debtor Bankruptcy Case and U.S. Trustee Quarterly Fees Assessed Pursuant to 28 U.S.C. § 1930(a)(6). A summary of the claims in Class 1 are as follows:

| Claimant | Estimated Unpaid Fees and Expenses Estimated Through Confirmation |
|---|---|
| United States Trustee | $650 |
| Hoover Slovacek LLP, Counsel for the Debtor. | $60,000 |
|  | $60,650 |

**Treatment**. Each Holder of an unpaid Allowed Administrative Claim shall be paid in Cash in full on the later of thirty (30) days after the Effective Date or the date such Claim

becomes an Allowed Administrative Claim, unless the Holder of such Claim agrees to a different treatment. The Debtor's Bankruptcy Estate shall be responsible for timely payment of the United States Trustee quarterly fees incurred pursuant to § 1930(a)(6). Any fees due as of the date of confirmation of the Plan will be paid in full on the Effective Date of the Plan. The Debtor also shall timely pay post-confirmation quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time as the Bankruptcy Court enters a final decree closing this chapter 11 case or enters an order either converting this case to a case under chapter 7 or dismissing this case. The Debtor contemplates making all distributions after the case is closed in order to minimize the impact of US Trustee Quarterly Fees. After confirmation, the Debtor shall file with the Bankruptcy Court and shall transmit to the United States Trustee a true and correct statement of all disbursements made by the Debtor for each quarter, or portion thereof that this chapter 11 case remains open in a format prescribed by the United States Trustee.

**Impairment.** These Claims are Unimpaired and therefore are not entitled to vote on the Plan.

**B.** **Class 2 – All other Administrative and Priority Claims.**

**Description**. All Claims entitled to Administrative Priority under § 503(b)(2) other than Class 1 Administrative Claims and Claims entitled Claims entitled to priority under §507(a). Debtor shall request that the Court set an Administrative Claim Bar Date for the same day the Court sets the hearing on Confirmation of the Debtor's Plan. The Order Setting the Administrative Claim Bar Date shall be disseminated to all creditors of the Debtor. Only Administrative Claims that are timely filed by the Administrative Claim Bar Date shall be allowed in this class. The Debtor is not aware of any claims in this Class except for certain post-petition advances made by William Walker.

**Treatment**. Allowed Administrative Claims and Priority Claims in Class 2 shall be paid in full on the Effective Date, or as soon thereafter as such claims are allowed by Final Order.

**Impairment.** These Claims are Unimpaired and therefore are not entitled to vote on the Plan.

**C.** **Class 3 – Unsecured Guaranty Claims.**

**Description.** There are two Claims in this Class. The Claim of Liang Gao against Engy which was guaranteed by Bellon in the amount of $225,000 and the Claim of Third Coast Bank against Mowery Plan, LLC in the amount of $5,866,71.29. These Claims are in the nature of guarantees.

**Treatment.** These creditors will not receive any payments under the Plan. However, the guaranties shall not be discharged and shall remain in effect until such time as they are paid in full by Engy/Dr. Lo/Mowery Plan, LLC pursuant to Exhibit A and the terms of its Plan, unless these creditors voluntarily agree to release their guaranties.

**Impairment.**  These Claims are Impaired and therefore are entitled to vote.

D.      **Class 4 -- Allowed Unsecured Claims.**

**Description.** Class 4 consists of the Allowed Claims of Unsecured Creditors.

**Treatment.** Allowed Class 4 Claims shall be paid in full in cash on the Effective Date.

**Impairment.**  These Claims are impaired and therefore are entitled to vote.

## V.      MEANS FOR EXECUTION OF THE PLAN

A.      **Cash Deposit**

On or before the first date set for the Confirmation Hearing, Bellon shall cause to be deposited into the non-interest bearing account IOLTA account of his counsel, an amount sufficient to pay the Allowed Class 2 and Class 4 Claims in full.  If a Claim is not yet Allowed, Bellon may file a motion to estimate the claim for purposes of making the deposit.  The source of funds is the Debtor's brother, Vladimir Alexander ("Noosh") Bellon.  The amount actually deposited will largely depend on the Court's ruling with respect to the Claims of William Walker and Wolfcreek Development.  Any funds remaining on deposit after payment of all Allowed Class 2 and Class 4 Claims will be returned to the Debtor.

B.      **Resolution of Dispute over Exercise of the Option to Purchase Engy Containers**

As discussed above, Bellon reached a resolution of his dispute with Dr. Lo over the option to purchase Engy Containers which includes an agreement to satisfy all open claims against Engy Group and Bellon.  Confirmation of the Plan shall constitute approval of this compromise under Rule 9019 of the Bankruptcy Rules without the need for a separate motion seeking such approval.  Bellon believes that the compromise readily satisfies the standards for approval of such compromises and is in the best interest of creditors.  The primary basis for this statement is that the settlement provides for payment in full of all creditors aside from also resolving the dispute between Bellon and Dr. Lo over exercise of the option.

C.      **Vesting of Property of Estate in the Reorganized Debtor**

On the Effective Date, all remaining property of the Debtor and of the Estate shall vest in the Reorganized Debtor free and clear of liens, claims, interests and encumbrances arising on or before the Effective Date, except as otherwise provided in this DS/Plan or the Confirmation Order. If the Reorganized Debtor defaults in performing under the provisions of this Plan and these cases are converted to a case under Chapter 7 prior to Substantial Consummation of this Plan, all property vested in the Reorganized Debtor and all subsequently acquired property owned by the Reorganized Debtor as of or after the conversion date shall revest in the Debtor and constitute property of the bankruptcy estate in the converted case.

**D.      Continuation of Business Operations**

From and after the date the Effective Date, the Reorganized Debtor is authorized to continue normal business operations and enter into such transactions as he deems advisable, free of any restriction or limitation imposed under any provision of the Bankruptcy Code, except to the extent otherwise provided in the Plan.

**E.      Discharge of Debtor and Injunction**

On the Confirmation Date, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in 11 U.S.C. § 1141(d)(1)(A), except that the Debtor will not be discharged of any debt or Claim: preserved under this Plan.

**F.      General Powers**

The Reorganized Debtor shall have all of the rights, powers and privileges set forth in this Plan, the Confirmation Order or applicable law. The Debtor shall have the power to take all such actions as in its judgment are necessary and appropriate to effectuate the purposes of the Plan, including but not limited to each power expressly granted in the subsections below and any power reasonably incidental thereto, but such power shall be expressly subject to the express provisions of the Plan. The Reorganized Debtor shall have the power to:

a.      Make all distributions for or contemplated by this Plan by and through his counsel's IOLTA account.

b.      Supervise and administer the resolution, settlement and payment of Claims and the distributions to the holders of Allowed Claims in accordance with this Plan.

c.      Enter into any agreement required by or consistent with the Plan and perform all of its obligations thereunder.

d.      Abandon any of the assets of the Reorganized Debtor if he concludes that such assets are of no benefit to the Creditors.

e.      Market and sell the Debtor's assets in accordance with the exercise of prudent business judgment.

f.      Participate as a party-in-interest in any proceeding before the United States Bankruptcy Court involving this Bankruptcy Case.

g.      Act in the name of or in the place of the Debtor in any action before the United States Bankruptcy Court or any other judicial or administrative body.

h.     Select and employ such professionals, agent or employees as he deems necessary to assist in the administration of the affairs of the Reorganized Debtor and compensate such persons.

i.     Hold any unclaimed distribution or payment to the holder of an Allowed Claim in accordance with this Plan.

j.     Propose any amendment, modification or supplement to this Plan or the Reorganized Debtor's governance documents.

k.     Receive, conserve and manage the assets of the Reorganized Debtor and sell or otherwise dispose of such assets for a price and upon such terms and conditions as he deems most beneficial to the Creditors and execute such deeds, bills of sale, assignments and other instruments in connection therewith.

l.     Open and maintain bank accounts on behalf of or in the name of the Reorganized Debtor.

m.     Pay all taxes, make all tax withholdings and file tax returns and tax information returns and make tax elections by and on behalf of the Reorganized Debtor.

n.     Pay all lawful expenses, debts, charges and liabilities of the Reorganized Debtor.

o.     Enforce all provisions of this Plan.

p.     Protect, perfect and defend the title to any of the assets of the Reorganized Debtor and enforce any bonds, mortgages or other obligations or liens owned by the Reorganized Debtor.

q.     Carry insurance coverage.

r.     Establish such reserves for taxes, assessments and other expenses of administration of the Reorganized Debtor as may be necessary and appropriate for the proper operation of matters incident to the affairs of the Reorganized Debtor.

s.     Exercise such other powers and duties as are necessary or appropriate.

## G.     Records

The Reorganized Debtor shall maintain books and records relating to the affairs of the Reorganized Debtor, and all expenses incurred by or on behalf of the Reorganized Debtor. The Reorganized Debtor shall also maintain records relating to all distributions either required to be made or effectuated under this Plan.

### H.      Effectuating Documents and Necessary Authorizations

All documents and exhibits that aid in effectuating the Plan ("Plan Documents") will be executed and, if appropriate, filed with the appropriate governmental authorities on or before the Effective Date, and they will become effective on the Effective Date. The Reorganized Debtor will have authority to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Reorganized Debtor, if and to the extent necessary, will seek such orders, judgments, injunctions, regulatory approvals, and rulings that may be required to carry out and further the intentions and purposes, and give full effect to the provisions of the Plan.

## VI.      PROVISIONS REGARDING DISTRIBUTIONS UNDER THE PLAN

### A.      Distributions

**1.** Any payments or distributions to be made by the Reorganized Debtor pursuant to the Plan shall be made to the holders of Allowed Claims in accordance with the terms and provisions of Article IV of this Combined DS/Plan.

**2.** No distributions shall be made until a Claim is resolved and an Allowed Amount is reached either by agreement or by Court Order. Subject to Bankruptcy Rule 9010, distributions to holders of Allowed Claims will be made at the address of each such holder as set forth on the proofs of claim filed by such holders, or at the last known address of such holder if no proof of claim is filed or if the Debtor has been notified in writing of a change of address. If any holder's distribution is returned as undeliverable, no further distributions to such holder will be made unless and until the Reorganized Debtor is notified in writing of such holder's then current address. All claims for undeliverable distributions must be made on or before the later of the first anniversary of the Effective Date of the Plan, or the ninetieth (90th) day following the date on which such Claim is Allowed. After such date, all unclaimed distributions will revert to the Debtor, and the Claim of any holder with respect to such distribution will be discharged and forever barred. Checks issued with respect to Allowed Claims will be null and void if not negotiated within six (6) months after the date of issuance thereof.

### B.      Procedures for Resolving and Treating Contested and Contingent Claims

**1.**      **Objection Deadline.** Unless a different date is set by order of the Bankruptcy Court, all objections to Claims shall be served and filed no later than twenty (20) days after a particular proof of Claim is filed. Any proof of Claim filed after a bar date set by the Court shall be of no force and effect, shall be deemed disallowed, and will not require objection. All Contested Claims shall be litigated to Final Order, *provided, however*, that the Reorganized Debtor may compromise and settle any Contested Claim.

**2.**      **Responsibility for Objecting to Claims.** All parties identified by the Bankruptcy Rules may file objections to Claims after the Effective Date of the Plan. The Plan does not impair the right of any party to object to any proof of claim.

**3.** **No Distribution Pending Allowance.** Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to any Contested Claim unless and until such Contested Claim becomes an Allowed Claim. A reserve for the full amount of the Contested Claim shall be maintained until the Claim is decided.

## VII.   CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

The occurrence of each of the following events shall be a separate condition to the Consummation Date.

### A.   Entry of Confirmation Order.

The Confirmation Order shall have been signed by the Court and duly entered on the Court's docket in form and substance acceptable to the Debtor, and shall include, among other things, findings of fact and/or conclusions of law that:

1. approve the terms of the Plan, as it may be amended or modified;

2. provide that, except as otherwise expressly provided in the Plan, all entities who have held, hold or may hold Claims against, or Interest in, the Debtor's Bankruptcy Estate will be permanently enjoined, on and after the Confirmation Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor or against the Debtor's Bankruptcy Estate on account of any such Claim, (iii) creating, perfecting or enforcing any encumbrance of any kind against Debtor or the Debtor's Bankruptcy Estate on account of any such Claim and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from Debtor or the Debtor's Bankruptcy Estate on account of any such Claim; provided however, notwithstanding any provision of the Plan to the contrary, each holder of a Claim shall be entitled to enforce his, her or its rights under the Plan;

3. reserve the jurisdiction of the Bankruptcy Court in accordance with Section IX, below;

4. terminate the automatic stay under § 362;

5. provide, pursuant to § 1125(e), that persons who have solicited acceptances or rejections of the Plan have acted in good faith and in compliance with the provisions, and are not liable on account of such solicitation or participation for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan; and

6. The Chapter 11 case is closed.

### B.   Finality of Confirmation Order; Waiver.

The Confirmation Order, in form and substance satisfactory to Debtor shall either have become a Final Order, or such condition shall have been waived by the Debtor.

*Cramdown.* The Debtor will request Confirmation of the Plan, as it may be modified from time to time, under § 1129(b) ("Cramdown").

## VIII.    MODIFICATIONS AND AMENDMENTS

The Debtor may alter, amend, or modify the Plan or any Exhibits thereto under § 1127(a) at any time prior to the Confirmation Date. After the Confirmation Date and prior to the earlier of (i) the Consummation Date; or (ii) Substantial Consummation of the Plan, the Debtor may, under § 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement approved with respect to the Plan, or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of the Plan so long as such proceedings do not adversely affect the treatment of holders of Claims or Equity Interests under the Plan; provided, however that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

## IX.    RETENTION OF JURISDICTION

Under §§ 105(a) and 1142, and notwithstanding entry of the Confirmation Order and passage of the Consummation Date, the Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

A.    Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim or Priority Claim or the resolution of any objections to the allowance or priority of Claims or Interest;

B.    Hear and determine all applications for compensation and reimbursement of expenses of Administrative Claims or Priority Claims;

C.    Effectuate performance of and payments under the provisions of the Plan;

D.    Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan, and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

E.    Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

F.    Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

G.    Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

H.    Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

I.    Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

J.    Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Debtor's Bankruptcy Case;

K.    Hear and determine matters concerning state, local, and federal taxes in accordance with §§ 346, 505, and 1146;

L.    Hear and determine all matters related to the property of the Debtor's Bankruptcy Estate from and after the Consummation Date;

M.    Hear and determine such other matters as may be provided in the Confirmation Order and as may be authorized under the provisions of the Bankruptcy Code; and

N.    Enter a final decree closing the Debtor's Bankruptcy Case.

## X.    EFFECTS OF CONFIRMATION

### A.    Binding Effect

The Plan shall be binding upon all present and former holders of Claims and Interests and their respective successors and assigns.

### B.    Moratorium, Injunction and Limitation of Recourse for Payment

**Except as otherwise expressly provided in the Plan, all entities who have held, hold or may hold Claims against, or Interest in, the Debtor's Bankruptcy Estate or the Debtor will be permanently enjoined, on and after the Consummation Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to**

any such Claim, (ii), the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor or the Debtor's Bankruptcy Estate, (iii) creating, perfecting or enforcing any encumbrance of any kind against the Debtor or the Debtor's Bankruptcy Estate on account of any such Claim and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or the Debtor's Bankruptcy Estate on account of any such Claim; provided, however, notwithstanding any provision of the Plan to the contrary, (a) each holder of a Claim shall be entitled to enforce his, her or its rights under the Plan., and (b) there is no injunction concerning claims against any of the current or former principals of the Debtor or against any non-debtor entity.

## C.      Exculpation and Limitation of Liability

1.       Neither the Debtor's Bankruptcy Estate, nor the Debtor, will have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the solicitation of votes to accept the Plan, the Debtor's Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct or as provided by the Plan, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

2.       No holder of a Claim or Interest, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, will have any right of action against the Debtor's Bankruptcy Estate or the Debtor, for any act or omission in connection with, relating to, or arising out of the solicitation of votes to accept the Plan, or the pursuit of confirmation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except as provided by the Plan or by law.

## XI.      DISCHARGE

On the Confirmation Date, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in 11 U.S.C. § 1141(d)(1)(A), except that the Debtor will not be discharged of any debt or Claim: (i) imposed by and/or preserved under this Plan.

## XII.      MISCELLANEOUS PROVISIONS

*Payment of Statutory Fees*. All fees payable under 28 U.S.C. § 1930 shall be paid on or as soon after the Consummation Date as is practicable by the Debtor.

*Severability of Plan Provisions*. If, prior to Confirmation, any term or provision of the Plan is held by the Court to be invalid, void or unenforceable, the Court, at the request of a party in interest, shall have the power to alter and interpret such term or provision to make it valid or

enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may be altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

*Successors and Assigns*. The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

*Consummation of Plan*. The Confirmation Order shall include (a) a finding by the Bankruptcy Court that Fed. R. Civ. P. 62(a) shall not apply to the Confirmation Order; and (b) the Bankruptcy Court's authorization for the Debtor to consummate the Plan immediately after entry of the Confirmation Order.

*Governing Law*. Unless a rule of law or procedure is supplied by federal law, including the Bankruptcy Code and Bankruptcy Rules, (i) the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, and (ii) corporate governance matters shall be governed by the laws of the state of incorporation, without giving effect to the principles of conflicts of law thereof.

## XIII.    CONFIRMATION OF THE PLAN

### A.    Voting Procedures and Requirements

The Debtor is providing copies of this Combined Disclosure Statement and Plan and Ballots to all known holders of Impaired Claims who are entitled to vote on the Plan.  A copy of the proposed Ballot is attached as **Exhibit "D".**

Pursuant to the provisions of the Bankruptcy Code, only Classes of Claims against the Debtor that are "Impaired" under the terms and provisions of the Plan and entitled to receive a Distribution thereunder are entitled to vote to accept or reject the Plan. Accordingly, Classes of Claims or Interests that are not Impaired under the terms and provision of the Plan are *not* entitled to vote on the Plan. In addition, Classes of Claims or Interests that are not entitled to a Distribution under the terms and provisions of the Plan are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

Under the Plan, holders of Claims in Classes 3 and 4 are Impaired, and, therefore, are entitled to vote to accept or reject the Plan. The following voting procedures (the "Voting Procedures") have been established with respect to the amount and classification of Claims and Interests, and the determination of the validity of Ballots submitted, for voting purposes:

- Unless otherwise provided below, a claim will be deemed temporarily allowed for voting purposes in an amount equal to (i) if a timely filed proof of claim has not been filed, the amount of such claim as set forth in the schedules of assets and liabilities, filed by the Debtor or (ii) the amount of such claim as set forth in a timely filed proof of claim.

- If a claim has been estimated or otherwise allowed for voting purposes by order of the Court, such claim will be temporarily allowed for voting purposes in the amount so estimated or allowed by the Court.

- Ballots that are otherwise validly executed but do not indicate either acceptance or rejection of the Plan will not be counted.

- Only Ballots that are timely received with signatures will be counted. Unsigned ballots will not be counted.

- Ballots postmarked prior to the Voting Deadline, but received after the Voting Deadline, will be counted.

- Ballots that are illegible, or contain insufficient information to permit the identification of the creditor, will not be counted.

- If a creditor simultaneously casts inconsistent duplicate ballots, with respect to the same claim, such ballots shall not be counted.

Unless otherwise ordered by the Court, questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of ballots shall be determined by the Bankruptcy Court at the Confirmation Hearing.

**IN ORDER TO BE COUNTED, EXCEPT TO THE EXTENT THE DEBTOR SO DETERMINES OR AS PERMITTED BY THE BANKRUPTCY COURT PURSUANT TO BANKRUPTCY RULE 3018, BALLOTS MUST BE SIGNED AND RETURNED SO THAT THEY ARE RECEIVED NO LATER THAN 5:00 P.M. (CST) ON _____, 2018, AT THE FOLLOWING ADDRESS:**

**EDWARD L. ROTHBERG**
**HOOVER SLOVACEK LLP**
**GALLERIA TOWER II**
**5051 WESTHEIMER**
**HOUSTON, TX 77056**
**Email: ballot@hooverslovacek.com**
**Fax: 713.977.5395**

**BALLOTS WILL BE ACCEPTED BY REGULAR MAIL, FACSIMILE OR EMAIL.**

As mentioned above, if your Ballot is not signed and returned as described, it will not be counted. If your Ballot is damaged or lost, or if you do not receive a Ballot, you may request a replacement by addressing a written request to Debtor's counsel at the above address by regular mail, facsimile or email. Please follow the directions contained on the Ballot carefully.

The process of soliciting acceptance of the Plan must be fair and open without outside influence in the form of representations, inducements or duress of any kind. To the extent that you believe solicitation of your vote from any party is being sought outside of the judicially approved and statutorily-defined disclosure requirements and Voting Procedures, please contact counsel for the Debtor.

## B.      Acceptance

Acceptance of the Plan requires that each Impaired Class of Claims or Interests (as classified therein) accepts the Plan, with certain exceptions hereinafter discussed below. Thus, acceptance of the Plan requires acceptance by each of the Impaired Classes.

Classes of Claims and Interests that are Unimpaired under the Plan are deemed to have accepted the Plan. Acceptances of the Plan are being solicited only from those persons who hold Claims or Interests of Impaired Classes.

The Bankruptcy Code defines acceptance of the Plan by a Class of Claims as acceptance by the holders of at least two-thirds (2/3) in dollar amount and a majority in number of Claims of that class, but for that purpose, only those Claims, the holders of which actually vote to accept or reject the Plan, are counted.

## C.      Confirmation

To confirm the Plan, § 1129 requires the Bankruptcy Court to make a series of determinations concerning the Plan, including, without limitation: (i) that the Plan has classified Claims and Interests in a permissible manner; (ii) that the contents of the Plan complies with the technical requirements of the Bankruptcy Code; (iii) that the Debtor has proposed the Plan in good faith; and (iv) that the Debtor has made disclosures concerning the Plan which are adequate and include information concerning all payments made or promised in connection with the Plan and the Bankruptcy Case. The Debtor believes that all of these conditions have been or will be met with respect to the Plan.

The Bankruptcy Code requires that, unless the Cramdown provisions of the Bankruptcy Code (as discussed below) are utilized, as a condition precedent to confirmation, the Plan be accepted by the requisite votes of each Class of Claims and Interests voting as separate Classes. Therefore, the Bankruptcy Court must find, in order to confirm the Plan, that the Plan has been duly accepted. In addition, the Bankruptcy Court must find that the Plan is feasible and that the Plan is in the "best interests" of all holders of Claims and Interests. Thus, even if holders of Claims were to accept the Plan by the requisite number of votes, the Bankruptcy Court is still required to make independent findings respecting the Plan's feasibility and whether the Plan is in the best interests of holders of Claims and Interests before it can confirm the Plan.

D.        **The Best Interest Test**

Whether or not the Plan is accepted by each Impaired Class of Claims entitled to vote on the Plan, in order to confirm the Plan the Bankruptcy Court must independently determine, pursuant to § 1129(a)(7), that the Plan is in the best interests of each holder of an Impaired Claim or Interest that has not voted to accept the Plan. This requirement is satisfied if the Plan provides each non-accepting holder of a Claim or Interest in such Impaired Class a recovery on account of such holder's Claim or Interest that has a value, as of the Effective Date, at least equal to the value of the Distribution each such holder would receive in a liquidation of the Debtor under Chapter 7.

To determine the value that holders of Impaired Claims and Interests would receive if the Debtor was liquidated under Chapter 7, the Bankruptcy Court must determine the aggregate dollar amount that would be generated from the liquidation of the Debtor's assets if the Case was converted to Chapter 7 liquidation and the Debtor's assets were liquidated by a Chapter 7 trustee (the "Liquidation Value"). Debtor's Liquidation Analysis is attached hereto as **Exhibit "E"**.

It is apparent from the attached Liquidation Analysis that the Plan provides at least as good a return as unsecured creditors as they would receive if this case had been commenced as, or if it was converted to, one under Chapter 7 of the Code.  Moreover, the unsecured creditors will receive their distribution much faster than in a Chapter 7 case because the assets are largely illiquid and could take years before they are converted to cash and distributed.  Under the Plan, Bellon anticipates the creditors will be paid no later than September 2018.

## XIV.    DISCLAIMERS

*The Debtor has No Duty to Update*. The statements contained in this Disclosure Statement and Plan are made by the Debtor as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement and Plan after that date does not imply that there has been no change in the information set forth herein since that date. The Debtor has no duty to update this Disclosure Statement and Plan unless otherwise ordered to do so by the Bankruptcy Court.

*Source of Information*. Counsel for Debtor has relied upon information provided by the Debtor in connection with the preparation of this Disclosure Statement and Plan. Although counsel for the Debtor has performed certain limited due diligence in connection with preparing this Disclosure Statement and Plan, he has not verified independently the information contained herein.

*No Legal or Tax Advice Provided*. The contents of this Disclosure Statement and Plan should not be construed as legal, business or tax advice. Each creditor or holder of an Interest should consult his, her, or its own legal counsel and accountant as to legal, tax and other matters concerning his, her, or its Claim or Interest.

This Disclosure Statement and Plan is not legal advice to you. This Disclosure Statement and Plan may not be relied upon for any purpose other than to determine how to vote on the Plan or object to confirmation of the Plan.

*No Admission Made*. Nothing contained herein shall constitute an admission of any fact or liability by any party (including, without limitation, the Debtor) or be deemed evidence of the tax or other legal effects of the Plan on the Debtor or on holders of Claims or Interests.

*No Regulatory Agency Approval*. No governmental or other regulatory agency approvals have been obtained as of the date of the mailing of the Plan and Disclosure Statement and Plan. Please note, however, that such approvals are a condition to the Plan's Effective Date.

## XV.    CONCLUSION AND RECOMENDATION

The Debtor believes that Confirmation of the Plan is desirable and in the best interests of all holders of Claims and Interests. The Debtor therefore urges you to vote to accept the Plan and to evidence such acceptance by returning the Ballot(s) so they will be received by the Balloting Deadline.

## XVI.    EXHIBITS TO PLAN AND DISCLOSURE STATEMENT

| EXHIBITS | DESCRIPTION |
|---|---|
| Exhibit "A" | Mediated Settlement Terms |
| Exhibit "B" | Engy Organizational Chart |
| Exhibit "C" | Amended and Restated Term Sheet |
| Exhibit "D" | Proposed Form of Ballot |
| Exhibit "E" | Liquidation Analysis |

**DATED: June 20, 2018.**

HOOVER SLOVACEK LLP

By: _____ */s/ Edward L. Rothberg*
      EDWARD L. ROTHBERG
      State Bar No. 17313990
      5051 Westheimer, Suite 1200
      Houston, Texas 77056
      Telephone: 713.977.8686
      Facsimile:  713.977.5395
      haselden@hooverslovacek.com

ATTORNEYS FOR DEBTOR FRANCIOS STANISLAS BELLON

**OF COUNSEL:**
Hoover Slovacek LLP
MELISSA HASELDEN
State Bar No. 00794778
5051 Westheimer, Suite 1200
Houston, Texas 77056
Telephone: 713.977.8686
Facsimile:  713.977.5395